[No. G004350. Fourth Dist., Div. Three. Nov. 30, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
EUCARIO CASTREJON CORDERO, Defendant and Appellant.

COUNSEL

Richard P. Siref, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, M. Howard Wayne and Tim Nader, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—A jury convicted Eucario Castrejon Cordero of first degree murder and found a firearm-use allegation to be true. Cordero con-

tends the trial court committed error by not instructing on unreasonable self-defense and failing to clarify part of the first degree murder instruction. We agree with the latter contention, but find the error was harmless.

I

The day before the homicide, Cordero spoke with the victim, Evaristo Arros, during a small party. Their conversation soon degenerated into a heated argument. Arros said he was "ready to accuse someone" and offered to fight Cordero. The two men were separated after Arros made a threatening gesture.

The next day Cordero asked his friend, Andres Martinez, to help him purchase ammunition from the local gun store. Martinez complied by displaying his own driver's license to the cashier since Cordero lacked identification. Martinez then loaned his car to Cordero and went home.

Later that same day, 12-year-old George R. saw Cordero and Arros angrily yelling at each other in Spanish. Arros was seated on the hood of a car and Cordero was standing a few feet away. George R. continued walking across the street when he heard a shot. Turning, he saw Cordero shoot Arros four or five times. Cordero fled in a red Chevrolet.

Fullerton Police Officer Jeffrey Johnson pursued Cordero after receiving a radio call regarding the shooting. Johnson signaled for him to pull over, but Cordero accelerated, weaved in and out of traffic, and ran several red lights. Johnson eventually apprehended Cordero by blocking his path with the patrol car. The officer found, inside the Chevrolet, the murder weapon and five expended cartridges.

Cordero testified Arros was a childhood acquaintance from Mexico. Their argument at the party was over Arros's threat to reveal Cordero's arrest in Chicago several years earlier for child molestation. Arros said he would be looking for Cordero, and Cordero should get a gun because he (Arros) had one.

The next day, worried about his conversation with Arros, Cordero decided to buy bullets for his gun. Returning home, he saw Arros across the street. Cordero immediately retrieved the gun from beneath his car seat, loaded it and approached his antagonist. He asked Arros if he was "still thinking like yesterday." Arros replied affirmatively, adding, "We are going to get things settled right now." Arros demanded Cordero go with him behind the apartments, but Cordero refused. Arros then moved quickly toward Cordero, threatening to beat him up. Frightened that Arros would

take the gun and use it on him, Cordero removed the weapon and began shooting.

## II

■ Cordero argues the trial court committed prejudicial error by failing to instruct sua sponte under CALJIC No. 5.17, which defines an honest but unreasonable belief in the necessity to defend oneself.[1] (*People* v. *Flannel* (1979) 25 Cal.3d 668, 672 [160 Cal.Rptr. 84, 603 P.2d 1].) We conclude the instructions given, taken as a whole, adequately informed the jurors of this legal principle.

Although the court did not give CALJIC No. 5.17, it did give CALJIC Nos. 8.40 and 8.50, both of which told the jurors there is no malice aforethought if the killing occurred "in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury." Cordero finds this language insufficient because it does not further explain, "[t]his would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief." (CALJIC No. 5.17 (5th ed. 1988).)

While we agree the added sentence further clarifies the concept of imperfect self-defense, we are not persuaded its omission misled the jury. The language of CALJIC Nos. 8.40 and 8.50 is clear. Moreover, we have reviewed the arguments of both counsel and find neither distorted the meaning of this legal principle. (See *People* v. *Brown* (1988) 45 Cal.3d 1247, 1256 [248 Cal.Rptr. 817, 756 P.2d 204].)

■ We must review the correctness of jury instructions in light of the court's entire charge to the jurors. (*People* v. *Crandell* (1988) 46 Cal.3d 833, 847 [251 Cal.Rptr. 227, 760 P.2d 423].) ■ Any potential error in the failure to give CALJIC No. 5.17 was cured by CALJIC Nos. 8.40 and 8.50. Moreover, it was defense counsel's duty to request further clarification of the imperfect self-defense instructions. (See *People* v. *Kimble* (1988) 44 Cal.3d 480, 503 [244 Cal.Rptr. 148, 749 P.2d 803].)

## III

■ Cordero contends the court erred in denying his request for an instruction clarifying the nature of the deliberation required for first degree

---

[1] CALJIC No. 5.17 provides: "A person, who kills another person in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and is not guilty of murder. This would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief. Such an honest but unreasonable belief is not a defense to the crime of [voluntary] [or] [involuntary] manslaughter."

murder. Under these circumstances, we agree further guidance should have been given the jury, but conclude any error was harmless.

The court gave CALJIC No. 8.20 (5th ed. 1988), the standard instruction on deliberate and premeditated murder. It provided, in part: "The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. . . . [¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, *having in mind the consequences,* [he] [she] decides to and does kill." (Italics added.)

During deliberations, the jurors asked the following question: "In deciding upon a verdict of first degree murder, part of the definition includes '. . . having in mind the consequences . . .' what exactly does consequences mean? I.e., consequences: of the act relating to victim, resulting in death or consequences: relating to defendant personally (i.e., he would face punishment by law if he killed victim)?" (*Sic.*) Counsel for Cordero requested the jury be told "consequences," at a minimum, include "not only consequences to the victim, but to the defendant himself."

The court concluded no further instruction was necessary, and told the jurors, "You have been instructed as to all of the necessary rules of law that may be necessary for you to reach a verdict. So any answer to your question will necessarily have to come from your discussions and your deliberations."

■ Cordero contends, and the Attorney General agrees, the "consequences" to be considered for the element of deliberation in murder may include those that affect the perpetrator.[2] A first degree murder conviction is proper although the defendant weighed and considered the consequences only to himself or herself. For example, a felon in a stolen car who kills a police officer during a routine traffic stop does so to avoid apprehension. (See *People* v. *Terry* (1969) 70 Cal.2d 410, 421 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Robillard* (1960) 55 Cal.2d 88, 100 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) Conversely, convictions have been upheld where the defendant gave no thought to personal consequences. (*People* v. *Sirhan* (1972) 7 Cal.3d 710 [102 Cal.Rptr. 385, 497 P.2d 1121], overruled on other grounds in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916].)

---

[2] The term "premeditated" was defined correctly for the jury as simply "considered beforehand." (CALJIC No. 8.20.) This element is not here in dispute and our discussion does not relate to it.

In most instances, however, the "consequences" considered cannot be categorized so easily. Homicides occur in diverse factual settings and the thought processes invoked by assailants are varied; in many instances an assailant will contemplate consequences to *both* the victim and to his or her own future. In other cases, the deliberation will simply involve consequences to a third party or even an idea or strongly held principle (e.g., politically or religiously motivated assassinations).

In *People* v. *Sirhan, supra,* 7 Cal.3d 710, the Supreme Court affirmed a murder conviction where the killing took place in a crowded room before television cameras. Despite these facts suggesting Sirhan had not considered the consequences to himself, a finding of deliberation stood.

When a slayer chooses killing over another course of action, the results occasioned by that course of action can be innumerable. The slayer need not have in mind all or any particular type of consequence; he or she may reflect on several consequences, but it is *not* a requirement that there be reflection about *more than one* consequence. A finding of deliberation may be based on any *one* consequence.

█ In this case, Cordero's primary defense was his voluntary intoxication reduced the offense from first or second degree murder to manslaughter. This was coupled with an "imperfect self-defense" argument. (*People* v. *Flannel, supra,* 25 Cal.3d 668.) In his closing argument, defense counsel emphasized facts he argued demonstrated a lack of premeditation and deliberation. We must determine whether the defendant's focus on this issue, coupled with the jury's request for clarification, required they be further instructed.

In *People* v. *Kimble, supra,* 44 Cal.3d 480, the trial court instructed the jury that a special circumstance would be established if it found the murder was committed "during the commission" of the separate felony of robbery or rape. Kimble contended the trial court erred in failing to give, sua sponte, an additional instruction explaining the felony-murder special-circumstance rules set out in *People* v. *Green* (1980) 27 Cal.3d 1, 59-62 [164 Cal.Rptr. 1, 609 P.2d 468] and *People* v. *Thompson* (1980) 27 Cal.3d 303, 321-325 [165 Cal.Rptr. 289, 611 P.2d 883]. In rejecting this argument, our Supreme Court held the *Green-Thompson* holdings merely clarified the felony-murder special-circumstance elements; therefore, the trial court was under no duty to give these instructions sua sponte in the absence of supporting evidence.[3] The court concluded: "Because the evidence, as opposed

---

[3] The court analogized the *Green-Thompson* holdings to other settings in which clarifying instructions were proper. These cases, however, did not treat the clarification as an "element" that must be given in all cases regardless of the evidence. To illustrate this principle,

to mere speculation, raised no issue with respect to the application of the special circumstance law, and because the trial court correctly instructed the jury regarding that law, it was defendant's obligation to request any clarifying or amplifying instruction on that subject. [Citation.]" (44 Cal.3d at p. 503.)

■ We need not decide whether the court had a sua sponte duty to clarify the concept of deliberation set forth in CALJIC No. 8.20. Once Cordero met his obligation under *Kimble* and requested a clarifying instruction after the jurors' inquiry, he was entitled to a correct instruction explaining his theory of defense, as long as substantial evidence supported it. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]; cf. *People* v. *Flannel, supra,* 25 Cal.3d 668, 684.)

This fundamental principle evolved because "the defendant is entitled to instructions which direct attention to evidence or amplify legal principles from which the jury may conclude that his guilt has not been established beyond a reasonable doubt." (*People* v. *Thompkins* (1987) 195 Cal.App.3d 244, 257 [240 Cal.Rptr. 516].) Moreover, it is important jurors understand legal concepts they are applying and, if they indicate some confusion, that they be reinstructed appropriately. (*Id.,* at p. 250.)

■ Here the Attorney General did not contest the evidentiary basis supporting the instruction and correctly so. There was substantial evidence to warrant giving a clarifying instruction once the jury indicated it was having trouble with a pertinent legal principle.

The jurors were unsure if they could consider whether Cordero deliberated the consequences to himself. With no clarification, the jury was left with the CALJIC instruction and with the common meaning of the word "consequences."

■ The "consequences" contemplated in CALJIC No. 8.20 are those flowing from the act of killing—it is this act which must be premised upon "reflection." It is this preexisting reflection that elevates murder to its highest degree. Nowhere does the law require this reflection specifically to concern the consequences to the killer, the victim, or any other particular thing. The killer need only reflect on *some* consequence of the act about to be committed.

---

the court listed the following kidnapping decisions: "(See, e.g., *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139-1140 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] [clarifying the 'asportation' element of section 209, kidnapping]; *People* v. *Thomas* (1970) 3 Cal.App.3d 859, 866 [83 Cal.Rptr. 879] [affirming pursuant to *Daniels* although no 'clarifying' instruction was given]; *People* v. *Thornton* (1974) 11 Cal.3d 738, 768 & fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267] [same].)" (*People* v. *Kimble, supra,* 44 Cal.3d at p. 501.)

■ Most juries have little problem applying this basic concept, perhaps explaining why there are so few cases directly confronting this issue. Nonetheless, this jury was confused as to the scope of the "consequences" it could consider. Counsel for Cordero met his obligation to request a clarifying instruction.

Under the circumstances of this case, it was not enough to inform the jurors they must rely on the very instructions that had confused them. The jury should have been told it could consider all the consequences established by the evidence, although only one is necessary for a finding of deliberation.

■ Failure to give this type of amplifying instruction is analyzed under the standard for prejudice enunciated in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], that is, whether the instructional error was harmless beyond a reasonable doubt.

■ We consider the following scenario: the jurors might possibly have disregarded the question of the defendant's consideration of the consequences to himself and determined only whether he considered the consequence to the victim. Assuming the jury found the element of deliberation without considering whether Cordero weighed the consequences to himself, we may safely conclude it agreed he considered the consequences to the victim. Assuming the failure to clarify the jury's question caused them to withdraw "consequences to the killer" from their deliberations, the question becomes whether the jury's consideration that Cordero did not reflect on the consequences to himself would have altered a decision that he weighed the consequences to the victim. We think not.

Evidence supporting Cordero's argument he did not weigh and consider the consequences to himself include (1) arguing with the victim beforehand, (2) shooting the victim outside Cordero's home in front of a crowd of neighbors, (3) driving around aimlessly afterward and telling the arresting officer he did not know where he was going, and (4) his drunkenness.

The act of shooting someone in front of a crowd is not so uncommon as to be remarkable. Driving around aimlessly and telling the officer he did not know where he was going indicates, at most, merely a disorientation after the crime, rather than a lack of deliberation beforehand. We conclude the evidence Cordero did not consider the consequences to himself is not of sufficient weight to have altered the jury's conclusion.[4]

---

[4]While a jury need only find a defendant deliberated the consequences *either* to the victim *or* to himself or herself, we are not prepared to eliminate the possibility that evidence of one

Weighed against the evidence of Cordero's purchase of bullets, seeking out the victim, approaching him with the loaded gun, and his motive to avoid revelation of a terrible secret, the conclusion Cordero wanted to see his victim dead would far outweigh a conclusion he failed to consider the consequences to himself.

In sum, the jury should have been told, in response to their question, to consider whether the defendant contemplated the consequences of his act, whether to himself or to the victim. However, under these circumstances, we cannot say the result would have been affected and believe the error was harmless beyond a reasonable doubt.

Judgment affirmed.

Scoville, P. J., and Parslow, J.,* concurred.

---

may, in appropriate circumstances, influence the jury's decision on the other. However, we find in this case it would not have affected the outcome.

   * Assigned by the Chairperson of the Judicial Council.