[No. S043210. Nov. 20, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
CONRAD ESTRADA et al., Defendants and Appellants.

**COUNSEL**

Robert E. Boyce, Laura Schaefer, Shulman, Shulman & Siegel and Corrine S. Shulman for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter, Scott W. Davenport, Kenneth C. Byrne and Emilio E. Varanini IV, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LUCAS, C. J.—A defendant convicted of first degree murder with at least one special circumstance found true will be sentenced to either death or life

imprisonment without the possibility of parole. (Pen. Code, § 190.2; all further statutory references are to this code.) One of these special circumstances is the felony-murder special circumstance under which a murder occurred during the commission or attempted commission, or the immediate flight after commission, of one of eleven specified felonies. (§ 190.2, subd. (a)(17)(i-xi).) A felony-murder special circumstance is applicable to a defendant who is not the actual killer if the defendant, either with the "intent to kill" (§ 190.2, subd. (c)), or *with reckless indifference to human life* and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of [one of the eleven enumerated felonies]." (§ 190.2, subd. (d), italics added [hereafter 190.2(d)].)

We granted review in this case to resolve a conflict in the Courts of Appeal over whether a trial court has a sua sponte duty to define the phrase "reckless indifference to human life" when instructing a jury regarding a felony-murder special-circumstance allegation against a defendant who is not the actual killer. We conclude that because a common understanding of the phrase "reckless indifference to human life" amply conveys the meaning of section 190.2(d), a trial court is not required, in the absence of a request, to further explain the statutory phrase to the jury. The Court of Appeal in this case reached a similar conclusion. We therefore affirm the judgment of the Court of Appeal.

### Background

Police officers were summoned to the El Monte home of Rudolph Jaime, where they found the house ransacked and Mr. Jaime lying in a pool of blood on the living room floor. The victim was alive but gravely injured from multiple cuts and stab wounds to his chest, neck, and head. He died from his injuries shortly after the officers arrived.

Defendant Michael Siqueros and a codefendant, Conrad Estrada, were present in Jaime's home and were immediately taken into custody. They were jointly charged in a three-count information with first degree murder, robbery, and burglary. Two felony-murder special circumstances were alleged, namely, (1) that the murder occurred during the commission of a robbery, and (2) that the murder occurred during the course of a burglary. It was also alleged, as to each count, that defendant and Estrada personally used a weapon in the commission of the offense. Finally, as to defendant only, an allegation was made that he suffered two prior serious felony convictions.

Defendant and Estrada were tried jointly before a jury. At trial, evidence was introduced that defendant was not the actual killer. In light of this

evidence, when instructing the jury on the two felony-murder special-circumstance allegations, the trial court gave the portion of CALJIC No. 8.80.1 that tracks the language of section 190.2, subdivisions (c) and (d), pertaining to accomplice liability. The jury was charged as follows: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor in the commission of the murder in the first degree, or with *reckless indifference to human life* and as a major participant aided, abetted, counseled, commanded, induced, solicited, requested or assisted in the commission of the crime of Penal Code section 190, subdivision (a), subdivision (17), which resulted in the death of a human being, namely, Rudolph Jaime." (Italics added.) The trial court gave no further instructions defining "reckless indifference to human life."

Following deliberations, the jury found both defendants guilty of first degree murder, robbery, and burglary. The jury also found true, as to each defendant, the special circumstance allegations that the murder of Jaime was committed while defendants were engaged in the robbery and burglary of the victim's home. Consistent with the prosecution's version of the evidence, the jury found true the allegations that Estrada personally used a knife during the commission of each offense, but found the same allegations not true as to defendant.

Both defendants were sentenced to life without the possibility of parole, with consecutive midterm sentences for the robbery and burglary convictions stayed pursuant to section 654. In addition, the court imposed on defendant a restitution fine of $5,000, and a consecutive sentence of 10 years, having found true the allegation that defendant suffered 2 prior serious felony convictions.

Defendant and Estrada jointly appealed their convictions and sentences on numerous grounds. Rejecting all contentions, the Court of Appeal unanimously affirmed the judgments.

In the portion of its opinion relevant to the issue presented here, the Court of Appeal held that the trial court had no sua sponte duty to define the phrase "reckless indifference to human life." Noting that defendant failed to request an explanatory instruction, the court found no trial court error. In so holding, the court expressly disagreed with the conclusion reached in *People v. Purcell* (1993) 18 Cal.App.4th 65 [22 Cal.Rptr.2d 242] (hereafter *Purcell*).

We granted defendant's petition for review in order to resolve this conflict in the decisions of the Courts of Appeal.

## Discussion

■ In a criminal case, a trial court has a duty to instruct the jury on " ' " " 'the general principles of law relevant to the issues raised by the evidence.' " ' " (*People* v. *Kimble* (1988) 44 Cal.3d 480, 503 [244 Cal.Rptr. 148, 749 P.2d 803].) The "general principles of law governing the case" are those principles connected with the evidence and which are necessary for the jury's understanding of the case. (*Ibid.*; *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].) As to pertinent matters falling outside the definition of a "general principle of law governing the case," it is "defendant's obligation to request any clarifying or amplifying instruction." (*People* v. *Kimble, supra,* 44 Cal.3d at p. 503.)

■ As we explained in *People* v. *Poggi* (1988) 45 Cal.3d 306 [246 Cal.Rptr. 886, 753 P.2d 1082], "[t]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language." (*Id.* at p. 327; see also *People* v. *Rogers* (1971) 5 Cal.3d 129, 138 [95 Cal.Rptr. 601, 486 P.2d 129]; *People* v. *Page* (1980) 104 Cal.App.3d 569, 577 [163 Cal.Rptr. 839].)

The rule to be applied in determining whether the meaning of a statute is adequately conveyed by its express terms is well established. When a word or phrase " 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.' " (*People* v. *Rowland* (1992) 4 Cal.4th 238, 270-271 [14 Cal.Rptr.2d 377, 841 P.2d 897], citing *People* v. *Bonin* (1988) 46 Cal.3d 659, 698 [250 Cal.Rptr. 687, 758 P.2d 1217]; see also *People* v. *Howard* (1988) 44 Cal.3d 375, 408 [243 Cal.Rptr. 842, 749 P.2d 279]; *People* v. *Williams* (1988) 45 Cal.3d 1268, 1314-1315 [248 Cal.Rptr. 834, 756 P.2d 221]; *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. (See, e.g., *People* v. *Raley* (1992) 2 Cal.4th 870, 901 [8 Cal.Rptr.2d 678, 830 P.2d 712] [no *legal* definition of "sadistic purpose"].) Thus, as the court in *People* v. *Richie* (1994) 28 Cal.App.4th 1347 [34 Cal.Rptr.2d 200] explains, terms are held to require clarification by the trial

court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance. (*Id.* at p. 1360.)

■ The jury in this case was instructed in the language of section 190.2(d). This provision was added to existing capital sentencing law in 1990 as a result of the passage of the initiative measure Proposition 115, which, in relevant part, eliminated the former, judicially imposed requirement that a jury find intent to kill in order to sustain a felony-murder special-circumstance allegation against a defendant who was not the actual killer. (*Purcell, supra,* 18 Cal.App.4th at p. 72.) Now, pursuant to section 190.2(d), in the absence of a showing of intent to kill, an accomplice to the underlying felony who is not the actual killer, but is found to have acted with "reckless indifference to human life and as a major participant" in the commission of the underlying felony, will be sentenced to death or life in prison without the possibility of parole. (See *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 298 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*); see also *People* v. *Neely* (1993) 6 Cal.4th 877, 898, fn. 10 [26 Cal.Rptr.2d 189, 864 P.2d 460].)

The portion of the statutory language of section 190.2(d) at issue here derives verbatim from the United States Supreme Court's decision in *Tison* v. *Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d 127, 107 S.Ct. 1676] (hereafter *Tison*). In *Tison*, the court held that the Eighth Amendment does not prohibit as disproportionate the imposition of the death penalty on a defendant convicted of first degree felony murder who was a "major participant" in the underlying felony, and whose mental state is one of "reckless indifference to human life." (*Tison, supra,* 481 U.S. at p. 158 & fn. 12 [95 L.Ed.2d at pp. 144-145].) The incorporation of *Tison*'s rule into section 190.2(d)—in express terms—brought state capital sentencing law into conformity with prevailing Eighth Amendment doctrine. (See *Tapia, supra,* 53 Cal.3d at p. 298, fn. 16; *People* v. *Bustos* (1994) 23 Cal.App.4th 1747, 1753 [29 Cal.Rptr.2d 112].)

*Tison* was concerned with whether imposition of the *death penalty* on an accomplice to a felony murder who neither killed nor intended to kill the victim would violate the Eighth or Fourteenth Amendments. The decision itself does not stand for the proposition that imposition of a penalty less severe than death, such as life imprisonment without parole, would offend constitutional principles in the absence of proof of "reckless indifference to human life." (Cf. *Rosenberg* v. *Henderson* (E.D.N.Y. 1990) 733 F.Supp. 577, 578 [rule of *Tison* inapplicable to defendant sentenced to life imprisonment].) Nonetheless, *Tison* is the source of the language of section 190.2(d), and the constitutional standards set forth in that opinion are therefore

applicable to *all* allegations of a felony-murder special circumstance, regardless of whether the People seek and exact the death penalty or a sentence of life without parole. We therefore begin our inquiry into whether the import of section 190.2(d) is adequately conveyed by its express statutory terms by looking to *Tison* for the meaning of the statutory phrase "reckless indifference to human life."

The defendants in *Tison* were two brothers sentenced to death for their involvement in the roadside kidnapping, robbery, and murder of a family of four. At trial, it was established that the defendants orchestrated the prison escape of their father and his cellmate, arming themselves, a third brother, and the two convicted murderers with guns while still inside prison walls, and assisting in the escapees' flight after the breakout. When a tire on the group's getaway car went flat on the highway, one of the defendants flagged down a passing motorist for help. Both of the defendants participated in the kidnapping and robbery of the occupants of the stopped vehicle, and were nearby when their father and his cellmate shot and killed the four victims. (*Tison, supra,* 481 U.S. at pp. 139-141 [95 L.Ed.2d at pp. 132-134].)

Relying on *Enmund* v. *Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368], the *Tison* defendants contended that because they did not intend to kill the victims, their death sentences did not comport with the Eighth Amendment's requirement that the death penalty be proportional to the culpability of the defendant. The high court rejected the defendants' argument. Noting that "[a] critical facet of the individualized determination of culpability required in capital cases is the mental state with which the defendant commits the crime" (*Tison, supra,* 481 U.S. at p. 156 [95 L.Ed.2d at p. 141]), the court found that, when faced with determining the level of a defendant's culpability for which the state may exact the death penalty, focusing solely on the question of whether the defendant intended to kill the victim was unsatisfactory. (*Id.* at p. 157 [95 L.Ed.2d at p. 144].)

In the high court's view, "some nonintentional murderers may be among the most dangerous and inhumane of all—the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property. This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.'" (481 U.S. at p. 157 [95 L.Ed.2d at p. 144].)

Finding support in the Model Penal Code, which equates reckless killing with intentional killing for purposes of classifying various types of homicide, the court in *Tison* concluded that "the reckless disregard for human life

implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state." (481 U.S. at p. 157 [95 L.Ed.2d at p. 144].) The court therefore held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." (*Id.* at p. 158 [95 L.Ed.2d at p. 145], fn. omitted.)

*Tison* thus instructs that the culpable mental state of "reckless indifference to life" is one in which the defendant "knowingly engag[es] in criminal activities known to carry a grave risk of death" (481 U.S. at p. 157 [95 L.Ed.2d at p. 144]), and it is this meaning that we ascribe to the statutory phrase "reckless indifference to human life" in section 190.2(d). Our task now becomes to determine whether the statutory meaning of the phrase is adequately conveyed by a common understanding of its terms.

Relying on the court's holding in *Purcell, supra*, 18 Cal.App.4th 65, defendant argues that the phrase, "reckless indifference to human life," has a technical, legal meaning that is not conveyed by an average juror's understanding of the words. In *Purcell*, the court determined that in common parlance, the phrase "reckless indifference to human life" fails to make clear the requisite mental state, expressed in *Tison*, that a defendant must subjectively appreciate that his or her acts were extremely likely to result in the death of an innocent human life. (*Purcell, supra*, 18 Cal.App.4th at p. 74.) In the court's view, " 'reckless indifference' commonly would be understood to mean something akin to extreme carelessness or extreme lack of concern." (*Id.* at p. 72, fn. omitted.)

We disagree and find that, when considered in its entirety—as the phrase is presented to the jury—"reckless indifference to human life" is commonly understood to mean that the defendant was subjectively aware that his or her participation in the felony involved a grave risk of death. The common meaning of the term "indifference," referring to "the state of being indifferent," is that which is "regarded as being of no significant importance or value." (Webster's New Internat. Dict. (3d ed. 1981) p. 1151, col. 1.) To *regard* something, even to regard it as worthless, is to be aware of it. (See *id.* at p. 1911, col. 1 ["regard" is synonymous with "consider, evaluate, judge"].)

Although the term "reckless"—standing alone—may arguably be understood in common parlance to mean simply neglectful, heedless, or rash (see Webster's New Internat. Dict., *supra*, at p. 1896, col. 1), when the word is placed in context within the statutory phrase "indifference to human life," what is conveyed to the jury is more than mere negligence.

The conclusion that in common parlance, the phrase "reckless indifference to human life" conveys the notion of a subjective appreciation or knowledge by the defendant of a grave risk of death is further supported by our decision in *People* v. *Dellinger* (1989) 49 Cal.3d 1212 [264 Cal.Rptr. 841, 783 P.2d 200]. The jury in that case was charged by the trial court as follows: " 'Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life *or* when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " (*Id.* at p. 1217.) At issue in *Dellinger* was whether this standard jury instruction defining implied malice communicated the requirement that the defendant have a subjective awareness or appreciation of the life-threatening risk created by his or her conduct. (*Id.* at p. 1215.) We concluded that, viewed as a whole, the definition of implied malice presented to jurors would make clear that one who acts with " 'a base antisocial motive and with a wanton *disregard* for human life' necessarily acts with *knowledge* of the life-threatening harm that might occur [if he or she engages in] 'an act with a high probability that it will result in death.' " (*Id.* at p. 1219, italics in original.) As our decision in *Dellinger* makes clear, we must consider the instructional language in its entirety in determining how the phrase would be commonly understood.

In reaching our conclusion in *Dellinger, supra*, we noted that the word "disregard" has been defined as describing the situation in which a lack of attention is "intentional or willful." (49 Cal.3d at p. 1219.) We also found persuasive the observation of the court in *People* v. *Benson* (1989) 210 Cal.App.3d 1223, 1230, footnote 4 [259 Cal.Rptr. 9] that an individual cannot be said to have wantonly *dis*regarded a fact without having regarded it in the first instance. (49 Cal.3d at p. 1220.) Likewise, in this case, one cannot be indifferent to something of which he or she is unaware.

Consistent with our decision in *Dellinger*, we conclude the generally accepted meaning of the phrase, "reckless indifference to human life," in common parlance amply conveys to the jury the requirement of a defendant's subjective awareness of the grave risk to human life created by his or her participation in the underlying felony. This is the meaning intended by the phrase "reckless indifference to human life" as it is used in section 190.2(d), and as defined in *Tison*. The phrase therefore does not have a technical meaning peculiar to the law, and the trial court had no sua sponte duty to further define the statutory phrase for the jury. Indeed, by expressly declining to "delineate the particular types of conduct and states of mind

warranting imposition of the death penalty" (*Tison, supra*, 481 U.S. at p. 158 [95 L.Ed.2d at p. 145]), the *Tison* court appears to suggest that it neither considered nor intended the "reckless indifference to human life" culpability standard have a meaning different from that of its commonly understood terms.

We note that following the Court of Appeal's decision in *Purcell, supra*, 18 Cal.App.4th 65, language from that opinion was added to CALJIC No. 8.80.1. A portion of the standard jury instruction now reads as follows: "A defendant acts with reckless indifference to human life when such defendant knew or was aware that [his] [her] acts involved an extreme likelihood that such acts could result in the death of an innocent human being." (*Ibid.*) Although we conclude that the trial court does not have a sua sponte duty to further amplify "reckless indifference to human life," and therefore disapprove *Purcell, supra*, 18 Cal.App.4th 65, our holding should not be understood to discourage trial courts from amplifying the statutory language for the jury. (Cf. *People* v. *Kimble* (1988) 44 Cal.3d 480, 501, fn. 16 [244 Cal.Rptr. 148, 749 P.2d 803].) Except for the *Purcell*-inspired portion of CALJIC No. 8.80.1 regarding "an extreme likelihood" of risk to innocent human life, discussed more fully below, we recognize that in appropriate cases, a clarifying instruction must be given on request. (Cf. *People* v. *Hardy* (1992) 2 Cal.4th 86, 153 [5 Cal.Rptr.2d 796, 825 P.2d 781]; cf. *People* v. *Cordero* (1989) 216 Cal.App.3d 275, 282 [264 Cal.Rptr. 774] [defendant entitled to requested clarifying instruction on theory of defense so long as supported by substantial evidence].)

According to the court in *Purcell*, from which the language of the clarifying instruction derives, "the *Tison* court intended the phrase 'reckless indifference to human life' to refer to a mental state which includes subjective appreciation, or knowledge, by the defendant that the defendant's acts involved an *extreme likelihood* that such acts could result in the death of an innocent human being." (*Purcell, supra*, 18 Cal.App.4th at p. 74, italics added.) Although the Court of Appeal in *Purcell* purported to base its formulation of *Tison*'s rule on the language of that case, a close reading of *Tison* fails to disclose the high court's intent to set the degree of risk posed by a defendant's conduct at the level of "extreme likelihood."

In fact, *Tison* sets forth various descriptions of the life-threatening risk of which a defendant who knowingly participates in criminal activities must be subjectively aware in order for imposition of the death penalty to be constitutionally permissible. (See *Tison, supra*, 481 U.S. at pp. 149 [95 L.Ed.2d at p. 139] ["likelihood of a killing in the course of a robbery [was] so

*substantial*"], 152 [95 L.Ed.2d at p. 141] ["acts were *likely* to result in the taking of innocent life"] and 157 [ 95 L.Ed.2d at p. 144] ["criminal activities known to carry a *grave* risk of death"], italics added.) Although each of these formulations means something slightly different, none of them employs the word "extreme" or appears to be synonymous with that word. Because the instructional phrase "extreme likelihood" would appear to convey a relative degree of risk that exceeds even the most demanding of the formulations of the requisite culpability set forth in *Tison*, this language does not accurately reflect the meaning to be ascribed to "reckless indifference to human life." The continued presence of this phrase in the standard jury instruction is therefore unwarranted.

The question remains what language should replace the standard instruction's present reference to an "extreme likelihood" of risk. In light of the intent of the voters to incorporate *Tison's* holding into section 190.2(d) (see *Tapia, supra*, 53 Cal.3d at p. 298, fn. 16), we believe that, in the event the request for a clarifying instruction is granted, the jury should be instructed in the language of *Tison* itself. Although the high court provided several descriptions of the requisite mental state throughout its opinion, we think it prudent to instruct according to the rule set forth in the holding of that case, i.e., "that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." (*Tison, supra*, 481 U.S. at pp. 157-158 [95 L.Ed.2d at p. 144].)

Thus, we find that in the event a request for clarification of the phrase "reckless indifference to human life" is granted, the present reference in CALJIC No. 8.80.1 to an "extreme likelihood" of risk to innocent life should be replaced with the language from *Tison* concerning a "grave" risk of death.

 Defendant further contends that in the absence of further definition by this court, the phrase "reckless indifference to human life" is too vague to comport with federal and state constitutional guarantees of due process and proscriptions against cruel and/or unusual punishment. The record in this case discloses, however, that defendant asserts these claims for the first time in his opening brief in this court, and he fails to make any attempt to show that they are "fairly included" in the issue on which his petition for review was granted. (See Cal. Rules of Court, rule 29.3(c).) Under these circumstances, defendant's vagueness challenge is not properly before the court and we could decline to address it. (Cal. Rules of Court, rule 28(e)(2); cf. *In re*

*Matthew C.* (1993) 6 Cal.4th 386, 390, fn. 4 [24 Cal.Rptr.2d 765, 862 P.2d 765]; *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 98-99 [255 Cal.Rptr. 670, 767 P.2d 1148].) In any event, his claim lacks merit.

Having concluded that, absent a request, the court is not required to clarify for the jury the phrase "reckless indifference to human life," we further reject defendant's additional contention that, without some limiting instruction, the statutory phrase is unconstitutionally vague. ■ In determining whether a statute is sufficiently certain to comport with due process standards, the court will "look first to the language of the statute, then to its legislative history, and finally to California decisions construing the statutory language." (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 246 [158 Cal.Rptr. 330, 599 P.2d 636].) A similar analytical framework is used when a vagueness claim is grounded on Eighth Amendment principles. Thus, in evaluating whether a capital sentencing scheme provides sufficient guidance to the sentencer, the court first inquires whether the statutory language is vague. (*Arave* v. *Creech* (1993) 507 U.S. 463, 470-471 [123 L.Ed.2d 188, 198, 113 S.Ct. 1534, 1540].) If the words of the statute themselves are uncertain, the court looks to decisions further defining the vague statutory language, and evaluates whether such construction meets the constitutional requirement of providing guidance to the sentencer. (*Ibid.*)

■ We have determined that, viewing the statutory language as a whole, the common understanding of the phrase "reckless indifference to human life" conveys the notion that a defendant subjectively appreciated that his or her conduct created a grave risk of death. Because the ordinary meaning of the statutory phrase amply communicates the parameters of the mental state subjecting a defendant to a sentence of death or lifelong incarceration—as articulated in *Tison*—the statute is sufficiently certain. (Cf. *Martin* v. *State* (1977) 261 Ark. 80 [547 S.W.2d 81, 82] [statutory phrase "circumstances manifesting extreme indifference to the value of human life" not unconstitutionally vague].) Our inquiry need go no further.

### Conclusion and Disposition

We find the statutory phrase "reckless indifference to human life" is commonly understood to mean that a defendant subjectively appreciated that his or her conduct created a grave risk to human life, and thus conveys the meaning of section 190.2(d), as derived from *Tison*. In light of this determination, we hold that the trial court had no sua sponte duty to further explain the statutory phrase for the jury.

The judgment of the Court of Appeal is affirmed.

Mosk, J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.