Filed 4/26/13  P. v. Garrett CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RUSSELL GARRETT,<br><br>　　　Defendant and Appellant. | B240559<br><br>(Los Angeles County<br>Super. Ct. No. BA355963) |

　　　APPEAL from a judgment of the Superior Court of the County of Los Angeles, Monica Bachner, Judge.  Affirmed.

　　　Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Russell Garrett (defendant) was convicted of murder. (Pen. Code, §§ 187, subd. (a) and 189[1]). On appeal, defendant contends that he received ineffective assistance of counsel when his counsel acquiesced in the trial court's answer to a question posed by the jury. We affirm the judgment.

## PROCEDURAL BACKGROUND

Following a trial, the jury found defendant guilty of the willful, deliberate and premeditated murder in violation of sections 187, subdivision (a) and 189. The jury found true that in committing the offense defendant personally and intentionally discharged a handgun causing the victim's death within the meaning of section 12022.53, subdivisions (c) and (d), and that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote further and assist in criminal conduct by gang members in violation of section 186.22, subdivision (b)(1)(C).

The trial court sentenced defendant to state prison for a term of 50 years to life, consisting of a term of 25 years to life for first degree murder, plus a consecutive term of 25 years for the personal and intentional discharge of a firearm enhancement in violation of section 12022.53, subdivision (d).

## DISCUSSION

### A.    Background Facts

Defendant, a member of a gang, exited a car, fired at rival gang members, and a bullet struck and killed a bystander. The driver of the vehicle testified that she complied with defendant's request for her to stop the car, defendant exited it, and the driver heard five to ten gunshots.

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

The weapon was found. An expert witness testified that the casings and fragments of the bullet jackets recovered from the crime scene and the bullet recovered from the victim's body were all fired from that weapon.

The prosecution's gang expert testified that the shooting was committed for the benefit of a criminal street gang. The person in whose house the weapon was found said that on the day of the shooting defendant asked him to borrow the weapon to "go put in some work," and when defendant returned the weapon to him defendant said he had shot at rival gang members, but missed.

The trial court instructed the jury with CALCRIM No. 521, stating, inter alia, "The defendant is guilty of first-degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. [¶] The defendant acted willfully if he intended to kill. [¶] The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. [¶] The defendant acted with premeditation if he decided to kill before completing the act that caused death."

During jury deliberations, the jury asked the trial court, "In the instruction for First Degree Murder, what is the meaning of the phrase 'knowing the consequences'? Does the phrase mean that the defendant knows the consequences of his actions for others, i.e., that others may be killed, or that the defendant knows the consequences of his actions for himself?"

The trial court stated outside the presence of the jury that it consulted with counsel about the jury's question, and that "[t]here actually is a very specific case that addresses the question of what happens when the jury asks almost the identical question that this jury asked. [¶] The case is *People vs. Cordero*, 216 Cal.App.3d 275, and in that case it explained that no particular type of consequence is required, but there must be reflection on a consequence. So I just summarized it. There's very specific language in the case that the court has discussed with counsel, and I was going to use the language right out of the case, except I'm going to change the word . . . 'slayer,' which is the word that was used in the case, and use the word the 'defendant,' because they're asking about the

3

defendant. And, also, I'm going to take out 'he or she.' In this case I think I can just use the word 'he.' [¶] Does everyone agree?" Defendant's counsel and the prosecutor responded "Yes."

The trial court proposed further modifications to the response, and read the proposed language to defendant's counsel and the prosecutor. The trial court again asked counsel if they had objections, and they responded that they did not.

The trial court had the bailiff provide the jury with the following answer to its question, consistent with the response the trial court read to counsel: "When a defendant chooses killing over another course of action, the results occasioned by that course of action can be innumerable. The defendant need not have in mind all or any particular type of consequence, he may reflect on several consequences, but it is not a requirement that there be reflection about more than one consequence. A finding of deliberation may be based upon any one consequence." The trial court had previously advised counsel that the underscored words in the answer to the jury's question were words that were italicized in *People v. Cordero* (1989) 216 Cal.App.3d 275.

### B.     Analysis

"To prevail on an ineffective assistance of counsel claim, a defendant must show that the conduct of his trial counsel about which he complains fell below the standard of reasonableness and that he was prejudiced by that conduct. [Citations.] Also, despite a claim of ineffective assistance, if 'the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.]' [Citation.]" (*People v. Espiritu* (2011) 199 Cal.App.4th 718, 725-726.)

Here, it is not below the standard of care for defendant's counsel not to object to the trial court's answer to the jury's question. The trial court based its response on *People v. Cordero*, *supra*, 216 Cal.App.3d 275, 280. In that case, the jury was instructed with CALJIC No. 8.20, stating in part: "'The word "deliberate" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for

4

and against the proposed course of action. . . . [¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] [she] decides to and does kill.'"[2] (*Id*. at p. 280.) During deliberations, the jury asked the following question: "'In deciding upon a verdict of first degree murder, part of the definition includes "*. . . having in mind the consequences . . .*" what exactly does consequences mean? I.e., consequences: of the act relating to victim, resulting in death or consequences: relating to defendant personally (i.e., he would face punishment by law if he killed victim)?' (*Sic*)." (*Ibid*.)

On appeal, the defendant in *People v. Cordero*, *supra*, 216 Cal.App.3d 275 argued that the trial court erred in denying his request for an instruction clarifying the nature of the deliberation required for first degree murder. (*Id*. at pp. 279-280.) The court concluded that the jury should have been told to consider whether the defendant contemplated the consequences of his act—either to himself or to the victim. (*Id*. at p. 284.) The court explained, "[The defendant] contends, and the Attorney General agrees, the 'consequences' to be considered for the element of deliberation in murder may include those that affect the perpetrator. A first degree murder conviction is proper although the defendant weighed and considered the consequences only to himself or herself. For example, a felon in a stolen car who kills a police officer during a routine traffic stop does so to avoid apprehension. [Citations.] Conversely, convictions have been upheld where the defendant gave no thought to personal consequences. [Citations.] [¶] In most instances, however, the 'consequences' considered cannot be categorized so easily. Homicides occur in diverse factual settings and the thought processes invoked by assailants are varied; in many instances an assailant will contemplate consequences to *both* the victim and to his or her own future. In other cases, the deliberation will simply involve consequences to a third party or even an idea or strongly held principle (e.g., politically or religiously motivated assassinations). [¶] . . .

---

[2]     This instruction is consistent with its counterpart, CALCRIM No. 521.

5

[¶] When a slayer chooses killing over another course of action, the results occasioned by that course of action can be innumerable. The slayer need not have in mind all or any particular type of consequence; he or she may reflect on several consequences, but it is *not* a requirement that there be reflection about *more than one consequence*. A finding of deliberation may be based on any *one* consequence." (*Id*. at pp. 280-281, fn. omitted.)

The trial court here instructed the jury using similar language concerning knowing, or having in mind, the consequences of a defendant's decision to kill with which the jury in *People v. Cordero*, *supra*, 216 Cal.App.3d 275 was instructed. And, the trial court here based its response to the jury's question on that case. The trial court properly responded to the jury's question.

Defendant contends that his counsel should have objected to the trial court's response to the jury's question because the jury's question, in part, asked in a parenthetical whether the phrase "knowing the consequences" means that defendant knew "that others may be killed," and that is functionally equivalent to express malice aforethought set forth in CALCRIM 520[3] defined as "unlawfully intend[ing] to kill," or implied malice aforethought defined in part as defendant deliberately act[ing] with conscious disregard for human life." Defendant argues therefore that "the trial court's

---

[3] The trial court instructed the jury with CALCRIM No. 520, stating, inter alia, "The defendant is charged in Count one with murder, in violation of Penal Code section 187. To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND 4. He deliberately acted with conscious disregard for human life. [¶] . . . [¶] [Malice aforethought] is a mental state that must be formed before the act that causes death is committed. It does not require deliberation . . . .[¶] . . . [¶] If you decide that the defendant committed murder, you must then decide whether it is murder of the first or second degree."

6

answer to the jury's question did not sufficiently distinguish between the malice aforethought required for murder and the deliberation required for a murder that is of the first degree. The trial court's answer that 'a finding of deliberation may be based on any one consequence would have led the jury to believe that malice aforethought would suffice for deliberation."

The performance of defendant's counsel was not inadequate because the trial court's answer to the jury's question would not have led the jury reasonably to believe that malice aforethought is sufficient to establish the deliberation required for murder of the first degree. The jury had been instructed with CALCRIM 520, regarding murder generally, and 521 regarding first degree murder. The jury's question specifically referenced "the instruction for First Degree Murder," CALCRIM 521, not any other jury instruction. The jury could not reasonably believe, based on the trial court's response to its question, that malice aforethought is sufficient to establish the deliberation required for murder of the first degree because the phrase "malice aforethought" is not contained in CALCRIM 521 defining first degree murder. That phrase is contained in CALCRIM 520 that defines murder generally and requires that if the jury decides that defendant committed murder it "must then decide whether it is murder in the first or second degree." CALCRIM 520 provides that to constitute murder the defendant must have acted with "a state of mind called malice aforethought."

The jury's question concerned "the meaning of the phrase 'knowing the consequences'" of a defendant's decision to kill, and not the difference between first degree murder and murder generally. In addition, defendant's act of killing with a "malice aforethought" state of mind cannot reasonably be construed to be one of the "consequences" of that killing. The court in *People v. Cordero*, *supra*, 216 Cal.App.3d 275 explained, "The 'consequences' contemplated in CALJIC No. 8.20 are those flowing from the act of killing . . . . Nowhere does the law require [that a defendant's] reflection [required for first degree murder] specifically to concern the consequences to the killer, the victim, or any other particular thing. The killer need only reflect on *some* consequence of the act about to be committed." (*Id*. at p. 282.)

7

In addition, as noted above, for there to be ineffective assistance of counsel, the record must show the reason for the challenged actions or omissions of defendant's counsel, unless there could be no satisfactory explanation. (*People v. Espiritu*, *supra*, 199 Cal.App.4th at pp. 725-726.) The record does not show that there is no satisfactory explanation for his counsel's failure to object the trial court's response to the jury's question. There was no reasonable basis upon which to object. The trial court's response was proper and the jury reasonably would not have been misled.

The record also does not reflect the reason defendant's counsel failed to object to the trial court's response to the question posed by the jury. Defendant refers to a declaration of his counsel contained in his petition for writ of habeas corpus, case number B245488, filed on December 6, 2012, that purportedly states why she did not object to the trial court's response to the jury's question. On January 22, 2013, we denied defendant's request to consolidate that petition with this appeal, and the petition will be considered separately from this appeal. We do not consider defendant counsel's declaration contained in his petition. "'A fundamental principle of appellate practice is that an appellant '"must affirmatively show error by an adequate record. . . . Error is never presumed. . . . "A judgment or order of the lower court is presumed correct."'"'" (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

We reject defendant's contention that he received ineffective assistance of counsel. The trial court based its response the jury's question on *People v. Cordero*, *supra*, 216 Cal.App.3d 275, its answer would not have led the jury reasonably to believe that malice aforethought is sufficient to establish the deliberation required for murder of the first degree, the record does not reflect the reason defendant's counsel failed to object to the trial court's response to the question posed by the jury, and defendant has failed to show that there could be no satisfactory explanation for his counsel's failure to object. If there is additional material outside the record in this case related to ineffective assistance of counsel, it will be considered in connection with the habeas corpus petition.

Even assuming defendant received ineffective assistance of counsel when his counsel acquiesced in the trial court's answer to a question posed by the jury because the

jury was lead to believe that malice aforethought was sufficient for deliberation, defendant did not show that he was prejudiced. To establish a claim for ineffective assistance of counsel, defendant "'"'must . . . show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"' [Citations.]" (*In re Thomas* (2006) 37 Cal.4th 1249, 1256.)

Regardless of defendant's failure to object to the trial court's answer to the jury's question, the jury could reasonably infer that defendant deliberated by weighing the considerations for and against his choice, including the consequences of his actions on others or himself, and knowing the consequences, decided to kill. The driver of the vehicle testified that while driving defendant requested that she stop her car. The driver complied, at which point defendant exited the car and the driver then heard five to ten gunshots. The person in whose house the weapon was found said that on the day of the shooting defendant asked him to borrow the gun to "go put in some work." Later, defendant told him that defendant had shot at rival gang members, but missed.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


ARMSTRONG, Acting P. J.


O'NEILL, J. *

---

*       Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.