Filed 4/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SHANNON SECREASE,<br><br>    Defendant and Appellant. | A158342<br><br>(Solano County Super. Ct.<br>Nos. VC43681/FCR307345) |

Shannon Secrease appeals from the summary denial of his resentencing petition, filed pursuant to Penal Code section 1170.95,[1] part of the statutory scheme enacted in 2018 by Senate Bill No. 1437. (Stats. 2018, ch. 1015, §§ 2–4) (Senate Bill 1437).) In 1998, a jury convicted Secrease of first degree murder and carjacking, finding true a special circumstance charge under section 190.2, subdivision (a)(17)(L) that the murder was committed during a carjacking. (§ 215, subd. (a).) He received a sentence of life in prison without the possibility of parole.

In an unpublished opinion, this court affirmed the conviction, but remanded for resentencing because the trial court failed to consider a discretionary reduction of the sentence to 25 years to life based on Secrease's youth at the time of the crime. (*People v. Secrease* (Feb. 21, 2001, A084777) [nonpub. opn.] (*Secrease I*).) On remand, Secrease was again sentenced to life

---

[1] All subsequent undesignated statutory references are to the Penal Code.

1

without the possibility of parole, and we affirmed the sentence by unpublished opinion. (*People v. Secrease* (Dec. 11, 2002, A097806) [nonpub. opn.].)

In July 2019, represented by privately retained counsel, Secrease filed a verified section 1170.95 resentencing petition. The district attorney responded by filing a motion to deny the petition for failure to make a prima facie showing of eligibility for section 1170.95 resentencing relief, and Secrease filed a reply. After entertaining argument from counsel, the court agreed with the prosecution and denied the petition without issuing an order to show cause. Secrease now appeals.

We are asked to decide whether a felony-murder special-circumstance finding by the jury that convicted Secrease in 1998 bars him from pleading a prima facie case for section 1170.95 resentencing relief as a matter of law. The issue is one that has divided the Courts of Appeal and is currently on review before our Supreme Court.[2] As explained below, we agree with the opinions that have held a prior felony-murder special-circumstance finding does not bar section 1170.95 relief.

Because no court has ever determined whether the felony-murder special-circumstance finding rendered against Secrease meets the minimum standards of personal culpability enunciated in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), we hold that he is entitled to such a determination before his section 1170.95 petition may be denied summarily. We will therefore remand this case so the trial court can undertake a sufficiency-of-the-evidence review under those cases. If, upon review of the entire record of conviction, the court determines that the felony-murder special-circumstance finding rendered against Secrease in 1998 meets the standards of *Banks* and *Clark*, he will be barred

---

[2] See *People v. Strong*, review granted March 10, 2021, S266606.

from alleging prima facie entitlement to relief. If, on the other hand, the court concludes to the contrary and Secrease's felony-murder special-circumstance finding fails that test, an order to show cause must issue and the case must be set for an evidentiary hearing.

## I. BACKGROUND

### A. Facts

We take the following facts from our unpublished opinion in *Secrease I*:

"On September 15, 1996, a police officer found David Iano lying on the road near the Vallejo waterfront; he was bleeding profusely from a gunshot wound to the head. He died from the gunshot wound, which was fired from a range of two to twelve inches. The bullet entered the right front of his head and exited the left rear, with a slightly upwards trajectory. Earlier that afternoon the victim had left his pickup truck at his residence with a 'for sale' sign on it.

"On September 29, 1996, a San Pablo police officer found the victim's pickup truck parked across the street from Ericc Pickett's house. The engine was lying on the ground. There was blood spatter on the passenger floorboard. Pickett approached the officer and claimed that the vehicle belonged to him. He had the keys to the truck. A search of his residence led to the discovery of a manual on how to rebuild similar truck engines.[3] A criminalist later found human blood smears across the truck seat from left to right and inside the frame of the passenger door. There was human blood spatter on the ceiling of the truck cab.

"Defendant made two statements to the police regarding the crime. On the date that the victim's truck was discovered, the police contacted defendant

---

[3] Ericc Pickett ultimately entered a no contest plea to first degree murder.

3

at his sister's house in San Pablo. Defendant indicated that two weeks earlier he had given his friend Ericc Pickett a ride to Vallejo to purchase a pickup truck. Defendant's girlfriend[4] accompanied them. Defendant said he gave Pickett a ride to the gas station, dropped him off, and observed him go to a pay phone. Defendant stated that he and his girlfriend then drove back to Contra Costa County. According to defendant, a day or two later he went to Pickett's house and helped him remove the engine from the truck, which was parked across the street from Pickett's house. Defendant claimed that he did not see any blood in the truck. He returned to Pickett's house a couple of other times and the truck was still there.

"The next day, September 30, 1996, defendant was arrested and interviewed by a detective. Defendant stated that on September 15, 1996, he and the woman he referred to as Belinda Anderson drove to Vallejo; he gave Ericc Pickett a ride. Defendant said that Pickett was interested in a pickup truck that had a large engine he wished to remove. Defendant told the detective that Pickett indicated during the drive to Vallejo that after he looked at the truck, he would return and steal it and that if the owner got in his way, he was going to 'whip his ass,' or something to that effect. Defendant believed that Pickett was carrying a gun. Defendant indicated that while Pickett did not directly state that he had a firearm, his comments made defendant believe that he did. According to defendant, he parked the car at a Raley's shopping center across the street from the victim's home. Defendant said that 'Anderson' stayed in his car, while he walked with Pickett to the victim's house. Defendant told the detective that Pickett contacted the victim and arranged for a test drive. Defendant indicated that the victim drove,

_____

[4] Apparently defendant's girlfriend's true name was Vivian Patton; defendant identified her as Belinda Anderson to the police.

4

defendant sat in the middle, and Pickett sat by the passenger door. They drove toward south Vallejo, with Pickett giving directions. Defendant said that Pickett indicated that he had to go to the bathroom and told the victim to drive toward the water.

"According to defendant, as the victim slowed to make a U-turn, Pickett pulled out a gun and shot him once in the head. The victim collapsed into defendant's lap as the truck came to a stop. Defendant said that he asked Pickett why he shot the victim; Pickett replied, 'Shut up or you'll get yours.' Defendant stated that he then crawled over Pickett and got out of the car. Pickett dragged the victim out of the vehicle and left him on the road. Defendant claimed that Pickett yelled at him to get back into the truck. The floor of the truck was covered in blood and defendant had blood on his face, arms, and hands. Pickett also had blood on his body and clothes. Defendant said that he got back into the truck and they drove to the Raley's shopping center, where he retrieved his car, and then drove back to San Pablo with 'Anderson.' According to defendant, Pickett threatened him if he talked about the incident. Defendant told police that he would not have accompanied Pickett had he known what was going to happen; he thought Pickett was going to return later, on his own, to steal the truck.

"Defendant stated that he returned to Pickett's house on at least two occasions to assist in removing the engine from the pickup and to clean up the blood. He said that he spoke to Vivian Patton (his girlfriend's real name) in order to arrange for an alibi.

"Defendant made statements to two civilian witnesses, indicating that *he* had shot the victim. Ericc Pickett's former girlfriend, Renea Monique Webb, was at Pickett's house a few days after the shooting. Defendant was present. She asked them how they acquired the truck. Defendant told her the

5

whole story that they went to Vallejo and stole a truck from a man and 'Shannon stated that he shot the man. And I don't know who pushed him out [*sic*] the truck.' Webb directly asked defendant, 'Did you shoot him?' He replied, 'Yes.' When first interviewed by the police, Webb indicated she did not know anything about the offense. She was once again Pickett's girlfriend at this time. She said she lent Pickett, or both him and defendant, money to buy a truck.[5] She testified that later, after Pickett was in custody, she called the police back, at her grandmother's urging, and told the truth. Although she testified that she never told the police where the gun was and did not know where it was, the police officer who interviewed her indicated that she stated that defendant said he buried it in his backyard. The police never located the murder weapon, although Pickett's mother gave them her .38 caliber firearm.

"Defendant's now former girlfriend, Vivian Patton, testified that she accompanied defendant and Ericc Pickett to Vallejo on September 15, 1996; she intended to visit her mother in Vallejo. During the drive, defendant sang along with a rap song that referred to killing someone and taking their possessions. They parked near a Raley's store and defendant and Pickett got out of the car; Patton remained behind. Approximately 30 to 45 minutes later, defendant returned without Pickett. He drove back to Patton's home. When they got to her residence, she noticed blood on his jacket, jeans, and shoes. She confronted him and asked what had happened. She said that defendant told her that he and Ericc went to Vallejo about a truck and that 'he had shot the guy. Like I said, he said he shot the guy.' Because the odor of blood

---

[5] She told police that she lent Ericc Pickett, alone, $300 to purchase a pickup truck. She testified that she lent the money to both Pickett and defendant.

disturbed her, she gave defendant a change of clothing. He did not appear to have a gun with him. Defendant later called and asked her to tell the police that she had been with him on a certain date; she refused. She had never known defendant to have a gun or to be violent.

"Patton's account to the police changed over time. When interviewed, she first told the police that she knew of Pickett, but that she had never seen him. She later said she went to Raley's with defendant and Pickett but denied knowing anything else. She subsequently told them about seeing the blood on defendant's clothing and told them that defendant said he was the shooter." (*Secrease I*, *supra*, A084777.)

### B. Trial, Verdict, and Appeal[6]

The prosecution pursued alternative theories of first degree murder liability at Secrease's trial in 1998. It presented the case to the jury on the theory that Secrease could be convicted as a direct perpetrator based on his statements to Webb and Patton that he was the shooter, or, alternatively, as an aider and abettor based on his participation in the plan to carry out a carjacking and his knowledge that Pickett was armed and willing to use violence if necessary. The jury returned a verdict convicting Secrease of both first degree murder and carjacking, without specifying the basis for the murder conviction. It found the felony-murder special-circumstance allegation true, but found not true two firearm use allegations under section 12022.5 (one each for the murder charge and the carjacking).

---

[6] The summary here comes from our opinion in *Secrease I*. Other than the amended abstract of judgment, the record before us includes nothing from the 1998 trial record. Neither party supplied us or the trial court in the section 1170.95 proceeding with the jury verdict, the jury instructions, the transcripts of the arguments made to the jury, or a record of any written communications between the jury and the trial judge about the instructions during deliberations.

7

On appeal, Secrease argued insufficiency of the evidence, separately attacking the sufficiency of the evidence underlying the two convictions and the felony-murder special-circumstance finding. With respect to the convictions, he argued that "the evidence was insufficient to prove that he was either the shooter, or that he aided and abetted in the carjacking." (*Secrease I*, *supra*, A084777.) We were unpersuaded. What Secrease overlooked was that the not true finding on use of a weapon shows only a failure to prove that allegation beyond a reasonable doubt, not the reverse. It does not affirmatively prove Secrease was a non-shooter. (*Secrease I*, *supra*, A084777.) At most, we said, the not true finding on use of a weapon means only that the jury was uncertain whether Secrease was the shooter or was an aider and abettor. (*Ibid.*, citing *People v. Santamaria* (1994) 8 Cal.4th 903, 918–919.) "This is true," we explained, "because there is no requirement under California law that the jury unanimously agree as to the theory of murder, so long as they unanimously agree that a defendant is guilty of murder." (*Secrease I*, *supra*, A084777.)

We went on to conclude that the evidence was "sufficient to support defendant's conviction of first degree murder, either under the theory that he was the shooter or [that he] . . . aide[d] and abet[ted]" felony murder, with carjacking as the underlying felony. (*Secrease I*, *supra*, A084777.) In upholding the alternative theory of aiding and abetting felony murder, we cited then well-established precedent applying the doctrine of natural and probable consequences, which no longer applies to murder charges in light of Senate Bill 1437. (See *ibid.*, citing *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5; *People v. Escobar* (1996) 48 Cal.App.4th 999, 1018–1019.) Our opinion does not address whether, as another basis for first degree murder liability, the evidence was sufficient to support conviction on the ground that Secrease

8

directly aided and abetted the killing of Iano and thus shared the killer's intent, even if he was not the shooter. The analysis was binary: the evidence was sufficient to support a finding either that he was the shooter and thus liable for first degree murder as the perpetrator, or that he was liable for first degree murder under a felony-murder theory because he aided and abetted a carjacking.

Our sufficiency-of-the-evidence analysis for the felony-murder special-circumstance finding under section 190.2, subdivision (a)(17)(L) was similar, but somewhat broader. We noted the jury was instructed under CALJIC No. 8.80.1 that the special circumstance could be found true under three scenarios: first, that Secrease was a major participant and acted with reckless indifference to human life in the carjacking (§ 190.2, subd. (d); *People v. Estrada* (1995) 11 Cal.4th 568 (*Estrada*))[7]; second, that Secrease was a direct aider and abettor in the murder and harbored the intent to kill (§ 190.2, subd. (c)); and third, that Secrease was the actual killer, in which case the special circumstance could be found true regardless of whether he had any intent to kill (§ 190.2, subd. (b)). (*Secrease I*, *supra*, A084777.) "Drawing all reasonable inferences and resolving all conflicts in favor of the judgment," we concluded that "[a] rational trier of fact ' "could have found the essential elements of the [special circumstance allegation] beyond a reasonable doubt" ' " under any of these three scenarios. (*Ibid*., quoting *People v. Davis* (1995) 10 Cal.4th 463, 509.)[8]

---

[7] Quoting from *Estrada*, *supra*, 11 Cal.4th at p. 577, we said "[r]eckless indifference to human life is defined as that mental state ' "in which the defendant 'knowingly engag[es] in criminal activities known to carry a grave risk of death.' " ' " (*Secrease I*, *supra*, A084777.)

[8] Secrease also argued the jury verdict form was too vague to support the felony-murder special-circumstance finding because it "did not use the

9

## C. Section 1170.95 Proceedings

Relying solely on the jury's section 190.2, subdivision (a)(17)(L) finding, the trial court denied Secrease's resentencing petition for failure to make a prima facie case. The court agreed with the prosecution that this finding was "essentially what would have to be proven to get to felony murder" under current law, even after the changes made by Senate Bill 1437. Even if it had discretion to make a determination on the issues of major participation and reckless disregard for life, the court noted, it would have found that the facts here meet the requisite standards. "I would concur" with *Secrease I*, the court explained, that the evidence was "sufficient . . . to support each theory raised," whether Secrease was the actual killer or in carrying out the carjacking was a major participant and acted with reckless indifference to human life.

## II. DISCUSSION

### A. Senate Bill 1437

Senate Bill 1437 "significantly modif[ied] the law relating to accomplice liability for murder" (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 325, review granted Mar. 18, 2020, S260493 (*Verdugo*)) by amending sections 188 and 189. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–847.) "In its uncodified findings and declarations the Legislature stated, 'It is necessary to amend the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was

---

term 'special circumstance,' did 'not even state that the murder was committed during the carjacking,' and did not call for findings as to whether defendant was the actual killer, an aider and abettor with the intent to kill, or an aider and abettor who acted as a major participant with reckless indifference to human life." (*Secrease I*, *supra*, A084777.) We rejected this line of argument, explaining that "[w]e fail to see how the jury could have been misled or confused by the verdict form when it is considered in conjunction with the instructions provided to them." (*Ibid.*)

10

not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Verdugo*, *supra*, 44 Cal.App.5th at p. 325, review granted.)

Senate Bill 1437 also enacted section 1170.95 (Stats. 2018, ch. 1015, § 4), which is now one of several resentencing schemes in Part 2, Title 7, Chapter 4.5 of the Penal Code (Chapter 4.5) that provide some form of retrospective sentencing relief to eligible defendants.[9] For any defendant who was "convicted of felony murder or murder under a natural and probable consequences theory," section 1170.95, subdivision (a) authorizes petitions seeking vacatur of the conviction and resentencing on remaining counts "when all of the following conditions apply": "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) The petitioner was convicted of first

---

[9] In addition to section 1170.95, see section 1170, subdivisions (d)(1) (general discretionary power to resentence on the court's own motion within 120 days of imposition of original sentence or at any time on recommendation of the Board of Parole Hearings, the district attorney of the county where the defendant was prosecuted, or other specified officials) and (d)(2) (resentencing procedure for youthful offenders sentenced to life in prison without possibility of parole), and sections 1170.126 (enacted by Proposition 36 [also known as "Three Strikes Reform Act of 2012"]; resentencing procedure for certain three-strikes inmates), 1170.18 (enacted by Proposition 47 [also known as "Safe Neighborhoods and Schools Act of 2014"]; resentencing procedure for certain felons who seek reclassification of qualifying offenses to misdemeanors), 1170.22 (resentencing procedure for felons convicted of now-eliminated offense of soliciting or engaging in prostitution by a person previously convicted of prostitution offense who tested positive for AIDS and was informed of the positive test), and 1170.91, subdivision (b)(1) (resentencing procedure for felons who are or were in the military and who wish to have trauma, mental health problems or substance abuse resulting from military service taken into account in mitigation of sentence).

degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[,] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Section 1170.95, subdivisions (b) and (c) set forth procedures that govern the initial screening of these resentencing petitions. After satisfying itself of the formal sufficiency of the petition (§ 1170.95, subds. (a)–(b)), the trial court "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)[10]

---

[10] There is a split in the case law concerning the procedural approach trial courts must take under section 1170.95, subdivision (c). Some courts hold that the statute requires two distinct reviews of prima facie sufficiency— one focusing on whether the allegations of the petition show the petitioner falls within the terms of the statute, and a second focusing on whether the allegations of the petition are sufficient to entitle the petitioner to relief. (E.g., *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327–328, review granted.) Under this two-step approach, the first step takes place before the issuance of an order appointing counsel and directing the prosecution to file a response, and the second step takes place before issuance of a show cause order. (*Ibid.*) Other courts hold that the statute provides for only one prima facie review prior to issuance of a show cause order. (E.g., *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684.) These courts hold that counsel must be appointed and a response from the

" 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851; see *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1262 [prima facie showing is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence"].) The determination of prima facie entitlement to relief dictates whether an order to show cause issues and an evidentiary hearing is set. On this point, section 1170.95, subdivision (c) is phrased in mandatory terms. (§ 1170.95, subd. (c) ["If the petitioner makes a prima facie showing that he or she is entitled to relief, the court *shall* issue an order to show cause." (Italics added.)].) At the evidentiary hearing, either party may present new or additional evidence probative of whether the petitioner may be validly convicted of murder under current law, and the prosecution bears the burden of proof under a reasonable doubt standard. (§ 1170.95, subd. (d)(3).)

The initial procedural steps required for resolution of a section 1170.95 petition took place in this case. Because Secrease had private counsel, no request for appointment of counsel was made; in response to the petition, the prosecution filed a motion in opposition, to which Secrease replied; and the court held a hearing to determine whether Secrease made the necessary prima facie showing of entitlement to relief. At this hearing, looking exclusively to the record of conviction, and in particular to the jury's special circumstance determination under section 190.2, subdivision (a)(17)(L), the

---

prosecution ordered before any determination of the adequacy of a prima facie case is made. (*Id.* at pp. 112, 123.)

This split in authority is not implicated here. We are dealing only with prima facie entitlement to relief.

13

trial court ruled that Secrease failed to make the requisite prima facie showing and therefore was not entitled to an evidentiary hearing under section 1170.95, subdivision (d).

**B. Prima Facie Showing of Entitlement to Relief**

    1. *Applicable Standards*

Because we are tasked with applying the section 1170.95, subdivision (c) standard governing prima facie entitlement to relief (*People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 976–977 (*Drayton*)), our review is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796.)

In applying the de novo standard, we accept the pleaded facts as true (*Drayton*, *supra*, 47 Cal.App.5th at p. 980), but evaluate those facts in light of facts readily ascertainable from the record of conviction, including our opinion in *Secrease I*. (*People v. Lewis, supra,* 43 Cal.App.5th at pp. 1137–1138, review granted; *id.* at p. 1136, fn. 7 [in determining the sufficiency of a § 1170.95 petition, the court may review the record of conviction, which includes the opinion in a defendant's direct appeal]; see *People v. Woodell* (1998) 17 Cal.4th 448, 456–457.) A petition's allegations fail to show entitlement to relief at the section 1170.95, subdivision (c) stage if "readily ascertainable facts" in the record of conviction "conclusively refute them as a matter of law." (*Drayton*, *supra*, 47 Cal.App.5th at pp. 968, 980.)

The Legislature's use of prima facie case entitlement to relief as the gateway determination that dictates whether a petitioner may proceed to an evidentiary hearing tracks the approach courts have taken to the preliminary processing of resentencing petitions in Proposition 47 proceedings. (*People v. Page* (2017) 3 Cal.5th 1175, 1188–1189; *Verdugo*, *supra*, 44 Cal.App.5th at p. 329, review granted.) The *Drayton* court's application of this concept

14

accords not only with precedent under Proposition 47, but with established habeas corpus procedure. (*Drayton, supra,* 47 Cal.App.5th at p. 978, citing *People v. Duvall* (1995) 9 Cal.4th 464, 474–475; see Cal. Rules of Court, rule 4.551(c)(1), (f).)

Under the habeas standard of pleading practice—a model we join *Drayton* in adopting—the trial court stands ready to reject any allegation of the petition that is conclusively refuted by the record of conviction, but otherwise accepts the allegations of the petition as true, and must proceed to "[a]n evidentiary hearing . . . if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact." (Cal. Rules of Court, rule 4.551(f).)

2. *The Petition and Allegations of Prima Facie Entitlement to Relief in This Case*

With the guidance of counsel, Secrease filed a detailed, verified petition alleging (1) "he is a person against whom a[n] 'information . . . was filed . . . that allowed the prosecution to proceed under a theory of felony murder' "; (2) he " 'was convicted of first degree [] murder following a trial' "; and (3) he " 'could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (§ 1170.95, subd. (a)(1)–(3).)

The first two elements of Secrease's claimed entitlement to resentencing relief are undisputed. The linchpin issue in this case is whether his attempt to plead the third requisite element—that he could not be convicted of murder today because of changes brought about by Senate Bill 1437— is conclusively refuted by the record. That issue in turn depends on Secrease's further

15

allegations that he was not the actual killer, that he did not have the intent to kill, and that he was neither a major participant in the carjacking nor did he act with reckless indifference to human life.

The Attorney General urges us to affirm on the ground that Secrease's jury found the felony-murder special-circumstance allegation to be true. In support of this contention, he offers the same rationale that the trial court relied upon: The felony-murder special-circumstance finding necessarily required the jury to find Secrease was a major participant in the carjacking and in carrying it out acted with reckless indifference to Iano's life. That, we are told, is sufficient to support a first degree murder conviction even today under section 189, as revised by Senate Bill 1437, which defeats Secrease's ability to allege a prima facie case for entitlement to section 1170.95 relief as a matter of law.

But when probed as to the basis for this contention at oral argument, the Deputy Attorney General took a position consistent with the approach we took in *Secrease I* in analyzing the sufficiency of the evidence supporting the special circumstance finding. She pointed to evidence that Secrease may have been the shooter or may have directly aided and abetted the shooter. Under this slightly expanded version of the argument for affirmance, Secrease would be foreclosed from alleging all of the key facts supporting his claim that he could not be convicted of murder under current law—not only his denial that he was a major participant in the carjacking who acted with reckless indifference to human life, but also his denial that he was the actual killer or that he aided and abetted the killing while sharing the intent to kill.

If, following *People v. Garcia* (2020) 57 Cal.App.5th 100, 106, review granted February 10, 2021, S265692, we were to read the conditional phrase "could not be convicted of first . . . degree murder" (§ 1170.95, subd. (a)(3)) as

16

tantamount to the appellate substantial evidence test, that might be correct. Reviewing for substantial evidence in *Secrease I*, we held that there was enough evidence for a rational jury to find that Secrease was the shooter (one of the two bases for liability we found sufficient to support the first degree murder conviction) and also that he harbored intent to kill (one of the three bases we found sufficient to support the felony-murder special-circumstance finding). From either holding, the conclusion that Secrease "could be convicted" of first degree murder under current law would automatically follow. (*Garcia*, at p. 105.) But for the reasons persuasively explained in *People v. Duchine* (2021) 60 Cal.App.5th 798, 812–815, we must respectfully disagree with our colleagues in *Garcia* that trial courts are called upon to perform something akin to appellate review at the subdivision (c) stage of a section 1170.95 proceeding. In a section 1170.95 proceeding, the ultimate question is not a backward-looking inquiry into whether a past conviction finds support in substantial evidence. (*People v. Rodriguez* (2020) 58 Cal.App.5th 227, 239, review granted Mar. 10, 2021, S266652.) Under subdivision (c), it is instead whether, applying changes brought about by Senate Bill 1437, there is a prima facie case "that [the defendant] did not, in fact, act or harbor the mental state required, for a murder conviction under current law." (*Duchine, supra*, at p. 815.)

While that question may be answered adversely to the petitioner as a matter of law at the prima facie case stage of a section 1170.95 proceeding if he or she makes allegations contrary to "readily ascertainable facts" shown by the record of conviction, the prosecution's pursuit of multiple theories of liability complicates things here. (*Drayton, supra*, 47 Cal.App.5th at pp. 968, 980.) Because the jury returned a general verdict, we cannot exclude the possibility that Secrease's jury found the special circumstance allegation to be

17

true based solely on a theory that he aided and abetted carjacking and that Iano's death occurred during the commission of that offense.  Nor can we exclude the possibility that some of the twelve jurors who voted to convict Secrease of first degree murder saw no need to decide whether he was the actual killer or harbored an intent to kill, but were satisfied of his guilt under the felony-murder rule.

Taking this vicarious liability theory out of the equation, as we must, it is certainly not "readily ascertainable" on this record that the jury found Secrease was the shooter or shared the murderous intent of the shooter.  Because we must focus on what the jury actually found in 1998, not what it could have found, Secrease's ability to plead a prima facie case for resentencing relief turns on what we can discern, objectively, from the verdict as read in light of the record of conviction.  What we know is that the jury found Secrease guilty of carjacking and first degree murder (possibly under the pre-Senate Bill 1437 formulation of the felony-murder rule), but was unable to find he was the shooter or that he used a gun in the carjacking.  We also know that the jury necessarily found at least that Secrease was a major participant in the carjacking and acted with reckless indifference to human life, since under CALJIC No. 8.80.1 as given, those two subsidiary findings were required in order to find the felony-murder special-circumstance charge to be true.

Is this enough to defeat Secrease's resentencing petition as a matter of law at the prima facie entitlement-to-relief stage of this section 1170.95 proceeding?  Within the Courts of Appeal, our colleagues across the state have

18

developed two sharply divergent approaches to analyzing this question.[11]  For the reasons explained below, we agree with the courts concluding that a defendant in Secrease's position is not barred as a matter of law from pleading a prima facie case for relief under section 1170.95, subdivision (c).  But because we find ourselves in agreement with a critical premise of the courts reaching the opposite conclusion—specifically, that section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury—we adopt something of a middle ground between these two lines of cases.

### C. Leading Cases Construing the Felony-murder Special-circumstance Statute:  *People v. Estrada*, *People v. Banks*, and *People v. Clark*

The background legal context is crucial here, so we begin our analysis by summarizing the legal parameters of the felony-murder special-circumstance statute, as well as the evolution of the case law construing it.  Felony murder is one of 22 special circumstances that determine eligibility for the death penalty or life without possibility of parole in murder cases.  (§ 190.2, subd. (a)(1)–(22).)  The felony-murder special-circumstance statute lists 12 qualifying felonies, carjacking among them.  (§ 190.2, subd. (a)(17)(A)–(L).)  For defendants who are non-killers but who may be exposed to liability under the felony-murder special-circumstance statute, section 190.2,

_____

[11] Compare *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, review granted June 24, 2020, S262011 (*Torres*); *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835 (*Smith*); *People v. York* (2020) 54 Cal.App.5th 250, 258–263, review granted November 18, 2020, S264954 (*York*); *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958 with *People v. Gomez* (2020) 52 Cal.App.5th 1, 14–17, review granted October 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141–1143, review granted October 14, 2020, S264284 (*Galvan*); *People v. Jones* (2020) 56 Cal.App.5th 474, 482–485, review granted January 27, 2021, S265854 (*Jones*); *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*).

subdivision (d) specifies the standard of culpability. "The statute, by its text, imposes an actus reus requirement, major participation in the enumerated felony, and a mens rea requirement, reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 674.)

    1. *Estrada*

Although section 190.2, subdivision (d) was enacted in 1990, for many years there was little appellate guidance on its meaning and proper application. The leading California Supreme Court decision to address the statute, *People v. Estrada*, *supra*, 11 Cal.4th 568—and the primary case we drew upon for guidance in our sufficiency-of-the-evidence analysis as to the special circumstance finding in *Secrease I*—held in 1995 that the phrase " 'reckless indifference to human life' " "does not have a technical meaning peculiar to the law" (*Estrada*, at p. 578), that trial courts have "no sua sponte duty to further define [it] . . . for the jury" (*ibid.*), and that the statutory language is not unconstitutionally vague without further definition (*id.* at p. 581).

To accurately convey the concept of " 'grave risk of death' "—which is the language used in *Tison v. Arizona* (1987) 481 U.S. 137, 157 (*Tison*), a capital case decided by the United States Supreme Court that served as the model for section 190.2, subdivision (d)—appellant Estrada argued that the trial court had a duty to amplify the phrase " 'reckless indifference to human life,' " such as by adding language informing the jury it means " 'extreme likelihood' " that the defendant's acts could result in death. (*Estrada, supra,* 11 Cal.4th at pp. 577, 579–580.) Our Supreme Court disagreed. In the absence of a request for a pinpoint instruction, the court held, the plain wording of the statute "in common parlance amply conveys to the jury the requirement of a defendant's subjective awareness of the grave risk to human life created by his or her participation in the underlying felony." (*Id.* at p. 578.)

Consistent with *Estrada*, the form jury instruction in common use at the time of Secrease's trial, CALJIC No. 8.80.1, paraphrased the statutory text, without significant elaboration. But the legal landscape changed in 2015 with the decision in *Banks*, *supra*, 61 Cal.4th 788, the first of two California Supreme Court decisions to address the meaning and application of section 190.2, subdivision (d) in the two decades since *Estrada*. *Banks* was followed in 2016 by *Clark*, *supra*, 63 Cal.4th 522. *Banks* and *Clark* both address sufficiency-of-the-evidence challenges to felony-murder special-circumstances findings, with the court holding in each case that the evidence was insufficient to support such a finding.

2. <u>*Banks*</u>

In *Banks*, defendants Banks, Gardiner, Daniels, and Matthews robbed a medical marijuana dispensary. (*Banks*, *supra*, 61 Cal.4th at p. 795.) Matthews, driving an SUV, dropped his armed coperpetrators off at the dispensary, and then parked nearby, staying in touch with them by cell phone message while the robbery was taking place. (*Id*. at pp. 795–796, 805.) Confronted by a security guard while escaping, Banks shot the guard to death in an exchange of gunfire. (*Ibid*.) There was no evidence of Matthews's role other than as a driver. He did not procure any of the weapons used; he was not present when the shooting took place; and he had no knowledge that his accomplices had killed before. (*Id*. at p. 805.) While *Estrada* addressed the meaning of the statutory language used in section 190.2, subdivision (d) in the abstract, *Banks* took up where *Estrada* left off, addressing the statute as applied to the facts before it. (*Banks*, *supra*, 61 Cal.4th at p. 801 ["rephrasing *Tison*'s dictates in essentially synonymous words takes us only so far"].)

The opinions in *Banks* and *Estrada* began from the same premise—that the language of section 190.2, subdivision (d) is drawn from *Tison*, *supra*, 481 U.S. 137. (*Banks*, *supra*, 61 Cal.4th at p. 794; *Estrada*, *supra*, 11 Cal.4th

21

at p. 575.)  But *Banks* went further, reading into the statute the Eighth Amendment principle that "in capital cases above all, punishment must accord with individual culpability." (*Banks*, *supra*, at p. 801.)  Between two poles illustrated by *Tison*, on the one hand, and an earlier death penalty case, *Enmund v. Florida* (1982) 458 U.S. 782, on the other hand, the court identified a spectrum of culpability that must be assessed in order to determine a defendant's eligibility for a special circumstance finding under section 190.2, subdivision (d).  (*Banks*, *supra*, at p. 800.)  "With respect to the mental aspect," the court held, *Tison*, and in turn section 190.2, subdivision (d), look to whether a defendant has " ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, at p. 801.)  And "[w]ith respect to conduct, *Tison* and *Enmund* establish that a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder[.]"  (*Id.* at p. 802.)

To illustrate this spectrum of culpability, the court undertook a close comparison of the facts in *Enmund* and *Tison*, starting with the facts in *Enmund*, where the defendant acted solely as a getaway driver and had no advance knowledge of his coperpetrators' murderous intent.  (*Bank*s, *supra*, 61 Cal.4th at p. 799.)  The court contrasted that scenario with the facts in *Tison*, which involved two brothers, Ricky and Raymond Tison, who helped their father, Gary Tison, and his cellmate, who were both serving life sentences for murders, plan and carry out a prison escape.  (*Id.* at pp. 799, 802–803.)  In doing so, they supplied weapons for the prison break and held guards at gunpoint.  (*Id.* at pp. 802–803.)  Following the escape from prison, the brothers participated in the armed carjacking of a passing car.  (*Id.* at

pp. 799, 802.) In the car was a family of four, who were driven into the desert, robbed, and ultimately shot by Gary and the cellmate. (*Ibid*.)

" 'Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery,' " the *Banks* court pointed out, the Tison brothers were " 'actively involved in every element of the kidnapping-robbery' " and were " 'physically present during the entire sequence of criminal activity culminating' " in the four murders. (*Banks*, *supra*, 61 Cal.4th at p. 802.) They held the doomed family at gunpoint while "the two murderers deliberated whether [they] should live or die, then stood by while [they] were shot." (*Ibid*.) On these facts, in a holding that became the source of the language in section 190.2, subdivision (d), the high court found this to be " 'major participation in the felony committed, combined with reckless indifference to human life, . . . sufficient to satisfy the *Enmund* culpability requirement.' " (*Banks*, *supra*, at p. 800, quoting *Tison*, *supra*, 481 U.S. at p. 158.)

Based on this factual comparison of *Tison* and *Enmund*, the *Banks* court identified the following specific factors as relevant in making culpability distinctions: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.) "No one of these

23

considerations is necessary, nor is any one of them necessarily sufficient," the court held. (*Ibid.*)

Applying the above criteria to the facts before it, the *Banks* court held the evidence there was insufficient to support a jury's felony-murder special-circumstance finding against Matthews. With respect to the issue of major participation, "[t]he evidence in the record places Matthews at the *Enmund* pole of the *Tison-Enmund* spectrum." (*Banks, supra,* 61 Cal.4th at p. 805.) The court concluded that "[he] was, in short, no more than a getaway driver, guilty like Earl Enmund of 'felony murder *simpliciter*' [citations] but nothing greater." (*Ibid.*) And as for the mental component, the evidence showed that although Matthews was aware he was a participant in an armed robbery, "nothing at trial supported the conclusion beyond a reasonable doubt that [he] knew his own actions would involve a grave risk of death." (*Id.* at p. 807.)

3. *Clark*

In *Clark,* the court applied and built upon the *Banks* framework of analysis, focusing its holding on the mens rea component. William Clark, the defendant, was one of a group of perpetrators of the armed robbery of a computer store. (*Clark, supra,* 63 Cal.4th at pp. 536–537.) When all customers had left after closing time, the plan was for Nokkuwa Ervin to force the store employees into a bathroom using an unloaded gun to coerce them, handcuff them to a railing, and then take computer equipment from the empty store. (*Id.* at pp. 613, 620–621.) Although Clark was the "mastermind" of the plan, he stayed behind and acted as a lookout, staying in touch with his coperpetrators by cellphone, with the intention of arriving in the second stage of the robbery to load the stolen computers into a rented truck. (*Id.* at pp. 612–613.) The plan went awry when Kathy Lee, the mother of one of the employees, unexpectedly arrived on the scene. (*Ibid.*) Ervin, who had a single live round in his gun, shot Lee to death. (*Ibid.*) But there was no evidence

24

that "Ervin was known to have a propensity for violence, let alone evidence indicating that [Clark] was aware of such a propensity." (*Id*. at p. 621.)

The court emphasized, as it did in *Banks*, that special circumstance felony murder requires a greater level of culpability than felony murder per se. (*Clark*, *supra*, 63 Cal.4th at pp. 615–616.) But it added the refinement that there is both a subjective and an objective dimension to assessing the mental component of culpability under section 190.2, subdivision (d). (*Clark*, *supra*, at pp. 616–617.) Under this analysis, even if an ordinary citizen may know, as an objective matter, that armed robbery involves an inherent risk of lethal harm, a defendant's subjective knowledge that a confederate is armed is not enough to warrant a finding of reckless indifference to human life. Something more is required, and the knowledge a coperpetrator is armed, by itself, is not enough. (*Id*. at pp. 617–618.)

To assess whether the evidence is sufficient to cross the threshold to death eligibility, the court outlined the following five factors as pertinent: (1) the defendant's knowledge of weapons, number of weapons, and whether the defendant used a weapon; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence during the felony. (*Clark*, *supra*, 63 Cal.4th at pp. 618–622.) In analyzing these considerations, the court assumed arguendo that Clark was a major participant in the computer store robbery, but found the evidence insufficient to support a finding that he acted with reckless indifference to human life. (*Id*. at pp. 614, 623.) Ervin was the only shooter; Clark had planned the robbery to minimize violence; and because Clark was not present at the

25

robbery, he had no opportunity to intervene or render aid when Ervin unexpectedly fired his weapon. (*Id*. at pp. 619–620, 623.)[12]

    4. *Cases Applying <u>Banks</u> and <u>Clark</u>*

In the years immediately following the decisions in *Banks* and *Clark*, courts applied the standards enunciated in those cases in the setting of habeas corpus (*In re Miller* (2017) 14 Cal.App.5th 960, 973–974), and in section 1170.95 resentencing proceedings that had been preceded by a successful collateral attack on a felony-murder special-circumstance finding based on *Banks* and *Clark* (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 926–927, 929). But a split within the Courts of Appeal emerged in 2020. Presented with the issue of whether a valid pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief, some courts now hold a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until he does so, he cannot plead a prima facie case under section 1170.95, subdivision (c) as a matter of law. (*People v. Gomez, supra*, 52 Cal.App.5th at p. 17, review granted; *Galvan, supra*, 52 Cal.App.5th at p. 1142, review granted; *Jones*,

---

[12] Following the decisions in *Banks* and *Clark*, the Judicial Council's Advisory Committee on Criminal Jury Instructions added optional language to CALCRIM No. 703 designed to capture the culpability factors enunciated in those decisions. (See Bench Note to CALCRIM No. 703 (Feb. 2016 and Apr. 2020 revs.) [*Banks* and *Clark* "identified certain factors to guide the jury in its determination of" the major participant and reckless indifference to human life issues, but did not hold that the court has a sua sponte duty to instruct on those factors].) The accompanying Bench Note advises that the trial court should determine whether these optional instructions setting forth guidance on the *Banks* and *Clark* factors need be given. (*Ibid*.) Similar optional language based on *Banks* was added to CALJIC No. 8.80.1. (See Comment to CALJIC No. 8.80.1 (Fall 2015 and Spring 2016 revs.).)

*supra*, 56 Cal.App.5th at pp. 483–484, review granted; *Allison*, *supra*, 55 Cal.App.5th at pp. 457, 459, fn. 9.)[13]

The courts so holding point out that major participation and reckless disregard of human life have always been required elements of a special circumstance finding under section 190.2, subdivisions (a)(17) and (d). And because revisiting those issues in a section 1170.95 proceeding, " 'in effect,' " amounts to an attack on a valid special circumstance finding, these courts take the view that a defendant in Secrease's position must first invalidate the special circumstance finding before he may seek section 1170.95 relief. (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, review granted; *People v. Gomez*, *supra*, 52 Cal.App.5th at p. 16, review granted.) In this view, it is not the changes to sections 188 and 189 that potentially render such a defendant's murder conviction invalid under current law; it is the *Banks* and *Clark* decisions that have that effect, which is why the remedy of habeas corpus must be sought in the first instance. (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, review granted.)[14]

---

[13] Accord, *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted November 18, 2020, S264978; *People v. Nunez* (2020) 57 Cal.App.5th 78, 95–96, review granted January 13, 2021, S265918. Cf. *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419–420 (rejecting claimed entitlement to § 1170.95 relief raised in appeal of murder conviction on the ground jury's felony-murder special-circumstance finding rendered appellant ineligible for resentencing as a matter of law).

[14] According to the *Galvan* court, allowing a defendant facing a pre-*Banks* and *Clark* felony-murder special-circumstance finding to revisit that finding in section 1170.95 proceedings "would . . . give him an enormous advantage over other similarly situated defendants based solely on the date of his conviction," since "[d]efendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence

Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding—on the ground that, under current law as revised by Senate Bill 1437, he could no longer be convicted of murder. (*Torres*, *supra*, 46 Cal.App.5th at pp. 1179–1180, review granted; *Smith*, *supra*, 49 Cal.App.5th at pp. 93–94, review granted; *York*, *supra*, 54 Cal.App.5th at pp. 259–261, review granted; *People v. Harris*, *supra*, 60 Cal.App.5th at pp. 956–958.) According to these courts, if the petitioner obtains vacatur of a prior special circumstance finding in a section 1170.95 proceeding, that is because the statute expressly requires it as a "collateral consequence" of the resentencing relief to which a successful section 1170.95 petitioner is entitled. (*York*, *supra*, 54 Cal.App.5th at p. 260, review granted.)

These courts see no basis to graft what is, in effect, an exhaustion requirement onto section 1170.95, thereby forcing petitioners with felony-murder special-circumstances findings to obtain habeas relief first, before seeking section 1170.95 resentencing. In their view, because *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute" (*Torres*, *supra*, 46 Cal.App.5th at p. 1179, review granted), it is not appropriate to give a pre-*Banks* and *Clark* felony-murder special-circumstance finding preclusive effect. As the panel in *Smith* explained, "[i]t would be inappropriate to 'treat[] [such] findings as if they resolved key disputed facts' when the jury did not

---

supported that finding[, and] [i]f the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings." (*Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, review granted.)

have the same questions before them." (*Smith*, *supra*, 49 Cal.App.5th at p. 93, review granted.) "What permits a defendant convicted of felony murder to challenge his or her murder conviction based on the contention that he or she was not a major participant in the underlying felony who acted with reckless indifference to human life," the *York* panel explained, "are the changes Senate Bill 1437 made to sections 188 and 189, and in particular the addition of section 189, subdivision (e)(3), not the rulings in *Banks* and *Clark*." (*York*, *supra*, 54 Cal.App.5th at p. 261, review granted.)

**D. Preclusive Effect of Pre-*Banks* and *Clark* Felony-murder Special-circumstance Finding in Section 1170.95 Proceedings**

1. *A Prior Jury Felony-murder Special-circumstance Finding Cannot Defeat a Prima Facie Case for Entitlement to Relief Under Section 1170.95, Subdivision (c) Absent a Judicial Determination That the Evidence Was Sufficient To Support It Under* <u>Banks</u> *and* <u>Clark</u>

We agree with the panels in *Torres*, *Smith*, and *York* that a murder defendant facing a pre-*Banks* and *Clark* felony-murder special circumstance may properly allege that the murder conviction is no longer valid "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) Those changes include the addition of section 189, subdivision (e)(3), which provides that to be liable for felony murder (subject to exceptions not here relevant), a defendant must be "a major participant in the underlying felony [who] . . . acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

While it is true that the language of section 189, subdivision (e)(3) tracks language that has always been a part of section 190.2, subdivision (d), *Banks* and *Clark* placed new limits on its meaning. Because we must presume the Legislature knows and acts against the backdrop of existing case law (*In re Greg F.* (2012) 55 Cal.4th 393, 407; *People v. Overstreet* (1986)

29

42 Cal.3d 891, 897 (plur. opn. of Broussard, J.)), the language of section 189, subdivision (e)(3) as enacted by the Legislature in 2018 necessarily carries the meaning announced in *Banks* and *Clark*, since both cases were on the books when Senate Bill 1437 was passed and signed by the Governor.

Although overall we find *Torres*, *Smith*, and *York* to be more persuasive, we agree with a central premise of the reasoning in *Jones* and *Allison*. We think it is correct that section 1170.95, subdivision (c) cannot reasonably be read to permit a "do-over" of factual issues that were necessarily resolved against a section 1170.95 petitioner by a jury. (*Allison*, *supra*, 55 Cal.App.5th at p. 461; accord, *Jones*, *supra*, 56 Cal.App.5th at p. 485, review granted; *id.* at pp. 488–491 (conc. opn. of Menetrez, J.).) But we must respectfully disagree that a defendant facing a felony-murder special circumstance must first obtain vacatur of that finding in habeas corpus, before seeking section 1170.95 relief. We also think it goes too far to say that a felony-murder special-circumstance finding under section 190.2, subdivision (d) defeats a prima facie case for section 1170.95 resentencing relief categorically, in all circumstances.

As is always the case with sufficiency-of-the-evidence review, the application of *Banks* and *Clark* to a given set of facts ultimately presents an issue of law. Presumably, that is why even the panels requiring pre-*Banks* and *Clark* felony-murder special-circumstances defendants to proceed in habeas corpus as a prerequisite to seeking section 1170.95 relief recognize, at least implicitly, that these defendants may request a *Banks* and *Clark* determination *in some judicial forum*. (*Allison*, *supra*, 55 Cal.App.5th at p. 459, fn. 9 ["we note that a defendant whose special circumstance determination predated *Banks* and *Clark* may challenge the sufficiency of the evidence of the finding by means of a habeas corpus petition"]; *Galvan*, *supra*, 52 Cal.App.5th at pp. 1141–1143, review granted; *Jones*, *supra*,

30

56 Cal.App.5th at pp. 482–485, review granted.) But we see nothing in the text of section 1170.95 to suggest that a habeas court is the exclusive forum for such a challenge to be made.

Our focus must be on what the Legislature intended, starting with its expressed intent in the statutory language, and always keeping in mind the statute's evident purpose. (*People v. Valencia* (2017) 3 Cal.5th 347, 357–358.) The most natural reading of section 1170.95, in our view, is that where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute. And on appeal from the denial of a section 1170.95 petition for failure to state a prima facie case for relief in such a situation, we have an obligation to do so as well.

The *Jones* and *Allison* courts downplay the significance of *Banks* and *Clark.* They point out that *Banks* and *Clark* merely clarified the law as it always was and that the current form of CALCRIM jury instructions designed to capture the Supreme Court's guidance in those cases is merely optional. (*Allison*, *supra*, 55 Cal.App.5th at pp. 458–459; *Jones*, *supra*, 56 Cal.App.5th at pp. 482–485, review granted.) But the heart of the problem we deal with here is not that Secrease's jury received inadequate instructions in 1998; under *Estrada*, the instructions were correct as given, as we confirmed in *Secrease I*.[15] Rather, the problem is that *no court* has ever reviewed that jury's special circumstance finding under *Banks* and *Clark* standards.

---

[15] There may be some tension between *Estrada*, on the one hand, and *Banks* and *Clark*, on the other, but if that is the case, it is something only our Supreme Court can address.

(*Torres*, *supra*, 46 Cal.App.5th at p. 1180, review granted.) Surely no one would suggest that in undertaking the review of a felony-murder special-circumstance finding for sufficiency of the evidence to determine the viability of a special circumstance charge today, a trial court—or this court—may view it as optional to apply the holdings in *Banks* and *Clark*.

If the factual findings underlying a jury's felony-murder special-circumstance determination are legally insufficient under *Banks* and *Clark*, we do not see how those findings can conclusively refute a prima facie showing of entitlement to resentencing relief. Because the changes made to section 189 prevent a defendant from being convicted of murder solely for his participation in the offense without findings of major participation and reckless indifference to human life, we conclude that a jury's pre-*Banks* and *Clark* special circumstance determination cannot, by itself, defeat the allegations of Secrease's petition as a matter of law. There must also be a judicial determination of the sufficiency of the evidence to support that determination, and Secrease is entitled to have it made in a section 1170.95 proceeding—under current law.

2. *Statutory Text, Structure, Purpose, and Legislative History*

Three features of the statute convince us that the approach taken in *Torres*, *Smith*, and *York* to pre-*Banks* and *Clark* felony-murder special-circumstances petitioners is correct. First, the statutory text suggests the Legislature saw the new section 1170.95 statutory remedy it created as cumulative to other available remedies, including habeas corpus, given its express statement in section 1170.95, subdivision (f), that "[t]his section does not diminish or abrogate any rights or remedies otherwise available to the petitioner." Second, section 1170.95 explicitly contemplates that, upon showing a right to relief, a successful petitioner's "prior [murder] conviction, and any allegations . . . attached to the conviction, shall be vacated and the

32

petitioner shall be resentenced on the remaining charges" (§ 1170.95, subd. (d)(3)), which suggests the Legislature understood that vacatur of a special circumstance finding may occur as a consequence of a successful section 1170.95 proceeding. (*York*, *supra*, 54 Cal.App.5th at pp. 260–261, review granted.)

Third, we find it significant that section 1170.95, subdivision (d)(2) expressly provides that "[i]f there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner," while omitting any reference to a felony-murder special-circumstance true finding being "an automatic statutory bar" to resentencing eligibility. (*Smith*, *supra*, 49 Cal.App.5th at p. 94, review granted.) When the Legislature intended to categorically exclude classes of people from eligibility for relief under other resentencing regimes in Chapter 4.5, what it did, structurally, was include an express disqualification provision.[16] No such disqualifier for defendants facing a felony-murder special-circumstance finding appears in section 1170.95.

Looking beyond statutory text to a consideration of statutory purpose, at that level, too, we see no basis for requiring felony-murder petitioners to resort first to habeas corpus. The Attorney General correctly describes

---

[16] See sections 1170, subdivision (d)(2)(A)(ii) (disqualifying inmates who were sentenced to life without parole for an offense where it was pled and proved that the defendant tortured the victim or the victim was a law enforcement officer or other public safety officer), 1170.02 (disqualifying from eligibility for compassionate release under § 1170, subd. (e), inmates who were convicted of first degree murder of a peace officer), 1170.126, subdivisions (c), (e)(2) and (e)(3) (disqualifying from Proposition 36 relief second-strike inmates, and inmates who suffered prior convictions for specified offenses), and 1170.18, subdivision (i) (disqualifying from Proposition 47 relief anyone with a prior conviction of specified offenses).

section 1170.95 as a statute with a "narrow and particular focus as a resentencing provision." By express legislative authorization, section 1170.95 creates a one-time remedy for applying specific substantive changes in the law of murder retroactively to final judgments, and for resentencing those who stand to benefit from these changes. It is apparent from the nature of the relief provided that the Legislature understood section 1170.95 proceedings would invalidate certain final judgments of conviction.[17] Indeed, that is the whole point of the statute where its requisites are met, including in some cases many years after the underlying convictions became final.[18]

The remedy of habeas corpus, by contrast, is subject to an array of judge-made rules designed to protect presumptively valid final judgments from endlessly repetitive collateral attacks as the law evolves over time. (*In re Reno* (2012) 55 Cal.4th 428, 451–452; *In re Clark* (1993) 5 Cal.4th 750, 764.) The *Galvan* and *Allison* courts express concern about allowing pre-*Banks* and *Clark* felony-murder special-circumstances defendants to invoke

---

[17] In this respect as well, it is useful to compare section 1170.95 to other schemes in Chapter 4.5 that provide retrospective resentencing relief. Under most of the resentencing schemes that authorize this type of relief in some form, the grant of a petition leaves the underlying conviction intact. (See §§ 1170, subd. (d)(2), 1170.126, 1170.18, 1170.91, subd. (b)(1).) But under sections 1170.22 and 1170.95—the only schemes that involve retroactive application of statutory changes that eliminate or substantively narrow the offense for which resentencing is available—the statutes expressly require vacatur of the underlying conviction, along with resentencing on any remaining counts. (§§ 1170.22, subd. (b); 1170.95, subd. (a).)

[18] Notably, section 1170.95 places no time limit on the filing of a resentencing petition. (Cf. §§ 1170.126, subd. (b) [Proposition 36 resentencing petitions must be filed within two years after the November 7, 2012 effective date of the enactment]; 1170.18, subds. (j), (p)(1)(B) [Proposition 47 resentencing petitions must be filed by November 4, 2022, except for persons committed to state hospitals after being found not guilty by reason of insanity, who must file by January 1, 2021].)

section 1170.95 on the theory this confers upon them an advantage post-*Banks* and *Clark* defendants do not have. (*Allison*, *supra*, 55 Cal.App.5th at p. 459; *Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, review granted.) We think that concern is misplaced, since post-*Banks* and *Clark* defendants, by definition, have had an opportunity either at trial, on direct appeal, or both, to obtain a judicial determination of the sufficiency of the evidence under the *Banks* and *Clark* standards—as a matter of right—while pre-*Banks* and *Clark* defendants have never had that opportunity. Collateral review by habeas corpus is not a substitute for it.

It is true that, beginning in 2015, with the decision in *Banks*, the remedy of habeas corpus has been available to pre-*Banks* and *Clark* defendants, but no habeas court must entertain such a petition on the merits or give reasons for a denial of relief. As a result, the problem of differential treatment cuts in favor of the *Torres*, *York*, and *Smith* reading of section 1170.95 because requiring pre-*Banks* and *Clark* defendants to resort first to habeas proceedings disadvantages them vis-à-vis other section 1170.95 petitioners by singling them out as the sole subgroup of all section 1170.95 petitioners who must clear the hurdles of habeas corpus, including its untimeliness bar, as a condition of access to resentencing relief.

Taking one final step in the interpretative process, since section 1170.95 is silent on the question whether a defendant facing a felony-murder special-circumstance finding must obtain vacatur of that finding in habeas corpus before he is entitled to seek relief under the statutory scheme, we find two aspects of the legislative history of Senate Bill 1437 to be broadly relevant. First, one of the Legislature's objectives was to reduce prison overcrowding

35

and the associated costs of lengthy sentences.[19]  Second, to illustrate the type of reform that was needed to better align individual culpability with the length of sentences, the Legislature noted in a set of findings preceding the enactment of section 1170.95 that *Banks* has read Eighth Amendment standards of individualized sentencing into section 190.2, subdivision (d).[20]

---

[19] Assembly Committee on Public Safety, Analysis of Senate Bill 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, page 7 (" 'As California seeks to address severe, unconstitutional overcrowding in its state prisons, voters and lawmakers have enacted reforms, including AB 109, Prop 47, and Prop 57, that are reducing incarcerated populations, shortening overly-punitive sentences, and bringing more Californians home.  However, the benefit of these recent reforms has accrued primarily to those with nonviolent convictions.  To meaningfully reduce prison populations and repair the harm of decades of mass incarceration, the state must also provide relief to those with violent felony convictions.  By addressing the characteristic unfairness of accomplice liability law, the California Legislature will demonstrate its commitment to bringing overdue reforms to violent felony sentencing and redirecting state resources away from costly investments in corrections.' "); Senate Committee on Appropriations, Analysis of Senate Bill 1437 (2017–2018 Reg. Sess.) as introduced February 16, 2018, page 1 ("The proposed 2018–19 per capita cost to house a person in a state prison is $80,729 annually, with an annual marginal rate per inmate of between $10,000 and $12,000.  The average contract-prison rate cost per inmate is over $30,000 annually.  The actual savings would be dependent on the number of individuals who successfully petition the court for resentencing and whose sentences to state prison are reduced to a shorter term than what was initially imposed.  When these averted admissions are compounded, the savings could reach into the millions of dollars annually.").

[20] In September 2017, a year before enactment of Senate Bill 1437, the Legislature adopted Senate Concurrent Resolution No. 48 (2017–2018 Reg. Sess.) resolution chapter 175 (SCR 48), which set forth a detailed series of findings to justify reforms better aligning the law of murder with the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability."  The *Banks* court's importation of Eighth Amendment standards of individual culpability into section 190.2, subdivision (d) is mentioned in the SCR 48

Given the citation to *Banks* in the legislative history to illustrate trends toward needed reform, it strikes us as implausible that the Legislature intended to exclude every defendant facing a felony-murder special-circumstance finding from eligibility for section 1170.95 relief. The idea of excluding felony-murder special-circumstances defendants from the ambit of the statute, as a class, seems all the more at odds with legislative intent because the high costs of lifetime incarceration are at their peak for inmates who will never be parole-eligible.

With all of the above considerations in mind—statutory text and structure, statutory purpose, and legislative history—we think the better approach is to analyze the binding effect of a section 190.2, subdivision (a)(17) true finding on grounds particular to the record in each case, rather than adopt a reading of section 1170.95, subdivision (c) categorically barring all pre-*Banks* and *Clark* felony-murder special-circumstances petitioners from access to resentencing relief unless they first obtain habeas relief. A case-specific approach seems especially suitable, given the focus on individual culpability in *Banks* and *Clark*. (*Smith*, *supra*, 49 Cal.App.5th at p. 94, review granted ["Determining whether a petitioner was a 'major participant' who acted with 'reckless indifference' as those terms are currently used in section 189 may require more than deference to a jury's special circumstance true finding—indeed, in cases like Smith's, where the finding was made before *Banks* and *Clark* were issued and not affirmed subsequent to those cases, it requires an analysis of the facts involved"].)

---

findings. (SCR 48, Recital ¶¶ 13–14.) As enacted and signed by the Governor a year later, Senate Bill 1437 expressly referenced these findings. (Stats. 2018, ch. 1015, § 1, subd. (c).)

### E. The Preclusive Effect of the Prior Jury Finding of a Felony-murder Special Circumstance in This Case

1. *On the Limited Record Before Us, We Cannot Say the Evidence Is Sufficient To Meet the <u>Banks</u> and <u>Clark</u> Standards, Foreclosing Relief*

Turning to the specific facts of this case as alleged in Secrease's verified petition:  The carjacking was Pickett's idea and the motive for it—to steal Iano's truck and remove its engine as a replacement for the engine in Pickett's truck—was Pickett's idea as well; of the two perpetrators, Pickett was the only one who was armed; Iano died of a single gunshot and there was only one shooter; the jury acquitted Secrease of using a weapon in the carjacking or in the murder; Secrease was unaware Pickett intended to shoot Iano and did not know Pickett to be someone who was capable of homicidal violence; Secrease thought that he and Pickett were simply going for a test drive, and that Pickett was going to return later to steal the truck; the shooting and Iano's death occurred rapidly, leaving Secrease no time to intervene or render aid; Secrease reacted with horror to the shooting when it occurred; Pickett told others he, not Secrease, shot Iano, and in the aftermath of the shooting, Pickett coerced Secrease into helping to cover up the crime by threatening him.  None of this contradicts anything the jury necessarily found in *Secrease I.*

*Banks* and *Clark* hold that evidence showing no more than that a defendant is guilty of felony murder *simpliciter*, even if he knows a coperpetrator is armed, is insufficient to meet the minimum individual culpability standard of reckless indifference to human life.  Taking what Secrease now alleges to be true, Pickett's plan was to steal the truck after the test drive, a scenario in which it was not clear the victim would have even been present, let alone harmed, in the course of the crime.  Under the prevailing law in 2001, we addressed this scenario in *Secrease I*, since it was

raised on appeal based on statements Secrease made to the police that his intention was to "facilitate a car theft that was to occur at a later date." (*Secrease I*, *supra*, A084777.) We rejected a line of argument that such circumstances do not rise to the level of reckless indifference to human life, concluding that Secrease was guilty of aiding and abetting felony murder because he encouraged or facilitated Pickett, while knowing Pickett intended to commit " 'an act which is criminal,' " which made him liable " 'for any reasonably foreseeable offense committed as a consequence by the perpetrator' " under then current law. (*Secrease I*, *supra*, A084777, citing *People v. Croy*, *supra*, 41 Cal.3d at p. 12, fn. 5.) After Senate Bill 1437, we can no longer say the same thing.

2. *A <u>Banks</u> and <u>Clark</u> Sufficiency-of-the-Evidence Review Must Be Undertaken by the Trial Court Before the Preclusive Effect of the Felony-murder Special-circumstance Finding Can Be Determined*

Although the facts alleged by Secrease suggest that the *Banks* and *Clark* standards cannot be met, the record of conviction before us—which consists almost entirely of what we can discern from *Secrease I*—is too sparse to make a definitive assessment of that issue one way or another. There may be aspects of the record the prosecution had no need to bring forward when it opposed relief solely on the ground that the special circumstance finding, without examination of the evidence behind it, justified denial as a matter of law. We will therefore remand so that a sufficiency-of-the-evidence review under *Banks* and *Clark* may be undertaken in light of the full record of conviction, including the trial evidence. Ultimately, the felony-murder special-circumstance finding against Secrease *may* foreclose resentencing as a matter of law, but only if the court concludes on review of the trial record that the evidence meets the minimum threshold of personal culpability set by *Banks* and *Clark*.

The Attorney General contends it is pointless to undertake a *Banks* and *Clark* sufficiency-of-the-evidence review here since any argument from Secrease that the trial evidence did not meet the minimum threshold required by those cases is destined to fail, given the inculpatory evidence summarized in *Secrease I*. There is, for example, Patton's testimony that while en route to meet Iano, Secrease sang along with a rap song that referred to killing someone and taking all their belongings, which would expose him to liability for murder as a direct aider and abettor, as well as the testimony from both Patton and Webb that after Iano's murder Secrease made statements to them implicating himself as the shooter, which would expose him to liability for both murder and felony murder as a direct perpetrator. But nothing in the record of conviction indicates the jury actually and necessarily found intent to kill based on the rap song, which was admissible (*Secrease I*, *supra*, A084777) but had limited probative value.[21] And if anything, given the not true finding on the weapons use allegations, the record suggests the prosecution failed to prove that Secrease was the actual killer.[22] Under the circumstances, since

---

[21] *People v. Coneal* (2019) 41 Cal.App.5th 951, 970 (absent corroborating evidence of defendant's actual intent, rap lyrics had minimal probative value in proving defendant "intended to kill rival gang members, catch victims by surprise, and engage in driveby shootings").

[22] The inference we draw that an actual killer theory was not the basis for the jury's verdict is founded on more than simply the not true finding on the weapons use allegations. Though we cannot trace precisely the instructional path the jury took here because the record does not include the actual instructions the jury was given, the pertinent language of CALJIC No. 8.80.1 as it read in 1998—which is the instruction *Secrease I* indicates was given—was as follows, as applicable to this case: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor . . . , you cannot find the special circumstance to be true . . . unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided,

40

the felony-murder special-circumstance finding may rest on any of three theories, we cannot say that Secrease's denial he was the actual killer or that he acted with intent to kill is irrefutably rebutted by the felony-murder special-circumstance finding. There is a vicarious liability theory that no longer has any currency after the enactment of Senate Bill 1437—the old, broader version of felony murder—that may have persuaded at least some of the jurors.

*People v. Price* (2017) 8 Cal.App.5th 409, one of the cases cited by the Attorney General, raises the question whether, on remand, and as part of its *Banks* and *Clark* sufficiency-of-the-evidence review, the court may consider evidence that Secrease was the actual killer, despite the jury's not true finding on the weapons use allegations. In *Price,* the victim, Merrill, was shot to

---

abetted, . . . or assisted any actor in the commission of the murder in the first degree . . . , or with reckless indifference to human life and as a major participant, aided, abetted, . . . or assisted in the commission of the crime of [the underlying felony] . . . which resulted in the death of a human being[.]" (CALJIC No. 8.80.1 (6th ed. 1996), brackets omitted; *People v. Proby* (1998) 60 Cal.App.4th 922, 931–932.)

We take this instructional language from Secrease's petition for review by the California Supreme Court, filed in 2001 (of which we take judicial notice (Evid. Code, §§ 452, subd. (d), 459, subd. (a))), which quotes a portion of CALJIC No. 8.80.1 as given at Secrease's trial. Specifically, the jury appears to have been instructed that, if it was unable to decide whether the defendant was the actual killer or an aider and abettor, it could only find the special circumstance allegation true on a theory of aiding and abetting. Although we are not able to determine the exact wording of the full instruction given at trial because the version of CALJIC No. 8.80.1 in effect in 1998 includes some bracketed portions that may or may not have been included, under the instructional language quoted in Secrease's 2001 petition for review, the jury could have proceeded to determine the issues of major participation and reckless indifference to human life *only* if it found Secrease was not the actual killer or was unable to decide whether he was the actual killer or an aider and abettor.

death during an armed robbery carried out by multiple perpetrators. (*Id.* at p. 414.) The victim was killed by a single gunshot; either Price or coperpetrator Fells was a possible shooter; and the jury found not true a sentencing enhancement allegation that Price personally used a firearm. (*Id.* at pp. 415–416, 424, 426–427.) As in this case, the jury was instructed on theories permitting it to convict either on a direct perpetrator theory or alternatively on a theory of aiding and abetting felony murder. (*Id.* at p. 426.) And as in this case, the jury returned a verdict of guilty on a charge of first degree murder, with a felony-murder special-circumstance finding. (*Ibid.*)

On appeal, defendant Price unsuccessfully argued the evidence was insufficient to support the special circumstance finding under *Banks* and *Clark.* (*Price, supra*, 8 Cal.App.5th at pp. 451–454.) After considering "all of the evidence presented to the jury regarding Price's role in the murder, including the evidence indicating Price was the actual shooter"—testimony from Fells pointing the finger at Price—the court concluded that "the evidence of felony murder against Price was strong" and that "the jury could readily have concluded that she was the person who played the most prominent role both in planning to rob Merrill and in robbing him and killing him, and that she intended to shoot him and did so." (*Id.* at pp. 452–453.) Then, in an alternative holding, the panel concluded that the evidence of Price's prominent role in Merrill's murder was so strong that, even disregarding Fells's testimony identifying Price as the shooter, it "would make no difference." (*Id.* at p. 453.)

Notably, Price did not show any error in the vicarious liability instructions given in that case, and as a result, the court was not called upon to consider whether the availability of a legally invalid theory of murder may have affected the special circumstance finding under review. Here, by

42

contrast, when we consider the preclusive effect of a prior jury finding of special circumstances felony murder, interpreting the meaning of that finding is a foundational step to giving it preclusive effect. And in doing so on this record, we must consider the possibility Secrease's jury may have relied on a now-invalid felony-murder theory. To deal with that, we adopt an approach consistent with the rule in "alternative theory error" cases where a general verdict might rest on either of two jury instructions, one legally valid and one legally invalid. Under these cases, reversal is mandatory unless under *Chapman v. California* (1967) 386 U.S. 18, the invalid instruction may be deemed harmless beyond a reasonable doubt. (*People v. Aledamat* (2019) 8 Cal.5th 1, 11–13.)[23]

We recognize the *Rodriguez* court found this mode of analysis inappropriate when reviewing a subdivision (d) determination (*People v. Rodriguez*, *supra*, 58 Cal.App.5th at pp. 239–240, review granted), but this context on review of a subdivision (c) determination is different. In order to give the special circumstance finding rendered along with Secrease's conviction preclusive effect at the subdivision (c) stage, we must first decide what that finding actually and necessarily adjudicated. And on the limited record before us, applying the *Aledamat* framework of analysis by analogy, we can say no more than this: While there is some evidence that in the aftermath of Iano's murder Secrease told others he was the shooter and that on the ride to Vallejo he sang along to a rap song suggesting homicidal intent, this evidence is not so strong that it justifies the conclusion beyond a reasonable doubt that the jury would have found true the special-circumstance felony-

---

[23] See *In re Martinez* (2017) 3 Cal.5th 1216, 1221; *People v. Chiu* (2014) 59 Cal.4th 155, 167; *People v. Guiton* (1993) 4 Cal.4th 1116, 1128–1129.

43

murder allegation, applying the standards of current law under section 190.2, subdivision (d) as interpreted and applied in *Banks* and *Clark*.

### 3. *Guidance on Remand*

On remand, the trial court is free to draw a different conclusion after review of the record of conviction in its entirety, subject to the following guidance. First, we are remanding the case for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding made against Secrease forecloses him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3). Either way the trial court rules on the *Banks* and *Clark* sufficiency-of-the-evidence issue, Secrease is entitled to the court's independent judgment on whether a rational jury could return a true finding on the felony-murder special-circumstance allegation under current law, without deference to the 1998 jury verdict or to our pre-Senate Bill 1437, pre-*Banks* and *Clark* sufficiency-of-the-evidence analysis in *Secrease I*.

Second, in conducting its review under *Banks* and *Clark*, the trial court may take into account anything in the trial record the parties bring to its attention,[24] but must disregard the prosecution's theories that Secrease was

---

[24] Although this case does not raise any issue concerning the timing of appointment of counsel under section 1170.95, subdivision (c) (*ante*, fn. 10; compare *People v. Cooper*, *supra*, 54 Cal.App.5th at p. 118, review granted,

the shooter or acted with intent to kill. Because nothing in the verdict or the findings accompanying the verdict indicates that the jury actually and necessarily adopted either of those alternative theories, they are not relevant at this stage. Under the pleading standards enunciated in *Drayton*, Secrease's allegations that he was not the actual killer and did not intend to kill are not irrefutably rebutted by the record of conviction. The focus of the *Banks* and *Clark* sufficiency-of-the-evidence review will be *solely* on whether Secrease is a "person, not the actual killer" who acted as "a major participant" in an enumerated felony "with reckless indifference to human life" (§ 190.2, subd. (d)), which is the standard incorporated into section 189, subdivision (e)(3) by reference. Any evidence that Secrease is liable for murder under section 189, subdivision (e)(1), on the ground he was the actual killer, or section 189, subdivision (e)(2), on the ground he was not the actual killer but acted with intent to kill as an aider and abettor of murder, raises contested issues of fact and must be addressed at an evidentiary hearing under section 1170.95, subdivision (d)(3).

Third, should the case eventually proceed to an evidentiary hearing, it remains possible that the court may determine Secrease was the shooter, or had the intent to kill and thus is liable for directly aiding and abetting murder or felony murder. The reasoning in our *Secrease I* opinion, which relies on *People v. Santamaria*, *supra*, 8 Cal.4th 903, remains sound. Under *Santamaria*, the not true finding on use of a weapon does not mean the

---

with *Verdugo*, *supra*, 44 Cal.App.5th at p. 332, review granted), we think the need to delve into the trial record in this case illustrates the value of having representation on both sides at the subdivision (c) stage of section 1170.95 resentencing proceedings—assuming the petitioner wishes to proceed on a represented basis—even with issues that may appear on the surface to be amenable to resolution as a matter of law based on a quick review of the record of conviction.

opposite—that Secrease was not the shooter; all it means is that the prosecution failed to prove beyond a reasonable doubt that he was. Thus, at any section 1170.95, subdivision (d)(3) hearing, the prosecution may once again attempt to prove that Secrease is guilty of first degree murder as the actual killer, as a direct aider and abettor of murder, or as an aider and abettor of carjacking in which he was a major participant and acted in reckless disregard of a grave risk to human life. For now, however, all we hold is that, based on the limited record before us, the jury's felony-murder special-circumstance finding, by itself, is insufficient to justify denial for failure to make a prima facie case.

## F. Harmless Error

The Attorney General argues that, even if the trial court erred by denying Secrease's verified petition without an evidentiary hearing, the error was harmless. Whether the facts are sufficient to support an allegation of special circumstance murder, the Attorney General points out, is an issue of law. It " 'does not require resolution of disputed facts; the facts are a given,' " and the only question is whether they are " 'legally insufficient under section 190.2 as elucidated in *Banks* and *Clark*.' " (*In re Miller, supra*, 14 Cal.App.5th at p. 980.) We have no quarrel with that premise, but it assumes a sufficient record to make such a determination, which is missing here. The remainder of the Attorney General's argument rests on flawed logic. We disagree that if this court "were to hold that the petitioner's conviction falls short of the *Banks* and *Clark* standard," we "would essentially be making a finding under section 1170.95, subdivision (d)(2), that he 'did not act with reckless indifference to human life or was not a major participant in the felony[.]' " Nor is it the case that a determination by us in this appeal that the *Banks* and *Clark* standards are not met "would trigger the requirement to

46

immediately grant relief, without need for a section 1170.95, subdivision (d)(3), hearing."

The issue the trial court decided here—and the issue we are reviewing—is not the merits of entitlement to relief, but more narrowly entitlement to an evidentiary hearing under section 1170.95 where each side will have an opportunity to offer "new or additional evidence." (§ 1170.95, subd. (d)(3).) The remedy for an erroneous prima face case determination under section 1170.95, subdivision (c) is not for us to pretermit the remainder of the resentencing process and decide the merits ourselves under the guise of a harmless error analysis. It is to reverse and remand, so that the remainder of the section 1170.95 resentencing process may take place, which in this case must resume with further proceedings at the subdivision (c) stage with a determination of whether Secrease has stated a prima facie case of entitlement to relief.

## III.  DISPOSITION

The order denying Secrease's verified section 1170.95 petition is reversed and the cause is remanded for further proceedings consistent with this opinion.

STREETER, Acting P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

Trial Court:   Solano County Superior Court

Trial Judge:   Hon. Tim Kam

Counsel:      Law Office of Charles Carbone and Charles Carbone,
        for Defendant and Appellant.

           Xavier Becerra, Attorney General, Lance E. Winters,
        Chief Assistant Attorney General, Jeffrey M. Laurence,
        Senior Assistant Attorney General, Rene A. Chacon and
        Juliet B. Haley, Deputy Attorneys General, for Plaintiff and
        Respondent.

A158342